ROBERT LOVE, Executor, *v.* ISAAC LOVE et al.

[No. 56, October Term, 1929.]

*Decided February 6th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Saul Praeger* and *Charles Z. Heskett,* with whom was *Lewis M. Wilson* on the brief, for the appellant.

*A. Taylor Smith* and *William A. Gunter,* for the appellees.

ADKINS, J., delivered the opinion of the Court.

Margaret Love died on November 2nd, 1928, aged nearly ninety-six. She left a will, dated September 27th, 1928, disposing of an estate of about $150,000, of which $135,000 was personal property. She gave to her friend, companion, and servant $1,000; to her granddaughter Elizabeth Bell Love, whom she had raised from babyhood as her own child, and who was the daughter of her son Thomas, she gave $10,000, her wearing apparel and household effects, and real estate valued at about $15,000; to the widow of a deceased son William, $5; to two of the daughters of Isaac Love, a deceased son, $200 and $100, respectively; to the widows of deceased sons, James Love and John Love, $1,000 each; to the widow of a deceased son, Isaac Love, $2,000; to her sons Hugh and Thomas, $20,000 each; to a son of Hugh Love, $5,000; to two sons of her son Robert, $5,000 each; to a daughter of her son Hugh and to six daughters of her son Robert, $5,000, to be equally divided between them, share and share alike; to her son Robert, the entire stock of merchandise and all of the fixtures and good will and accounts receivable of the business owned by testatrix trading under the name of John Love & Brothers, as well as the right to occupy without rent, for a period of two years after testatrix's death, the improvements and grounds used for said business, and devised to Elizabeth Bell Love subject to said right. In the inventories these items were appraised at $7,566.94. Robert Love was also the residuary legatee and was appointed executor with the direction that he be paid ten per cent. commissions.

In March, 1927, Mrs. Love fell and broke her left hip. The bone could not be set by reason of her advanced age, and from that time on she could not walk, but spent her nights in bed and her days in a wheel chair in her room,

practically helpless. She neither read nor wrote, nor had any other diversion except such as could be obtained from visits of her children and grandchildren and the freinds who called. Her condition apparently was aggravated in July, 1928, when she fell out of bed.

Twenty-six grandchildren, children of her deceased sons James, Isaac, John, and William, received no recognition under the contested will, except for the small legacies mentioned above to two of them. These twenty-six grandchildren, shortly after the will was probated, filed a caveat, and the five issues were sent to the Circuit Court for Allegany County for trial. At the conclusion of caveators' testimony, the issues as to the factum of the will, and fraud, were decided in favor of the appellee under the instructions of the court; at the conclusion of the case there was a directed verdict for the caveatee on the issue of knowledge and understanding of the contents of the will; and the jury found for the caveators on the issues of testamentary capacity and undue influence.

In the course of the trial many witnesses testified on each side, mainly on the question of testamentary capacity. The record contains more than five hundred pages. One hundred and one exceptions were reserved by caveatee to rulings on evidence and one to the rulings on the prayers. Nothing is to be gained by discussing separately and at length the numerous exceptions to testimony, as the case will not be retried. And the law has been well settled by so many decisions in this state that discussion of it would be merely repetition.

It is strongly urged that in Exception No. 22 there was error in refusing to strike out the opinion of Dr. Taylor that Mrs. Love was incompetent to make a valid deed or contract on the day she executed the will. Dr. Taylor was the attending physician and, under the well settled rule in this state, he was competent to express an opinion as to the mental capacity of the testatrix without giving any reasons for his opinion. But it is contended by appellant that, after expressing the opinion, he disqualified himself by stating that his opinion was based on her physical condition; that he was

unable to say whether she had sufficient mental capacity to make a gift; that there was nothing unusual or abnormal about her mental condition except that she was a failing old lady; that he observed nothing to produce the condition of senile decay, which he described, except that she was feeble and was deteriorating, failing in health; that he was unable to say when the condition might arise in a person suffering from arterio selerosis (as he testified Mrs. Love was); that the disease would interfere with the blood supply of the brain and lessen the functioning of the brain.

He was asked: "Doctor, you are forming your opinion from a physical condition in Mrs. Love which might eventuate in her incapacity at some time, but you could not state at what time incapacity would arise, could you?" His answer was, "No, sir."

As above stated, an attending physician, after sufficient opportunity for observation, may express his opinion, without giving reasons, of mental capacity. The question raised is whether the discussion of the ground of the opinion on cross-examination shows that opinion to be so lacking in foundation that it must be stricken out, notwithstanding it was properly admitted. We do not think so. The opinion was undoubtedly weakened, but we cannot say it was nullified. The weight of it was for the jury. *Crockett v. Davis,* 81 Md. 134. We are not overlooking what was said in *Higgins v. Carlton,* 28 Md. 115: "Extreme old age does not of itself disqualify a person for making a will; the law looks only to the competency of the understanding, and neither age nor sickness, nor extreme distress, nor debility of body will affect the capacity to make a will if sufficient intelligence remains." But, so far as we know, it has never been held that physical deterioration may not reach a point where the brain ceases to function, although there may not be any specific mental disease.

It would be most remarkable if in so many rulings on evidence no error could be found. We find none, however, which in our opinion would justify a reversal.

Exception No. 102 was to the ruling on the prayers. We

find no force in the objections urged to the five prayers which were granted at the instance of the caveators.

The sixteen prayers, which were granted, of the thirty-four offered by appellant, are not before us for review, but they gave him at least as much as he was entitled to, and embraced every applicable proposition of law included in his rejected prayers, which were, therefore, properly refused.

But appellant's main contention is that his demurrer prayers as to testamentary capacity and undue influence should have been granted. Expressing no opinion as to the weight of the evidence, we think there was enough to carry both issues to the jury.

The issue of fraud was withdrawn from the jury at the close of caveators' case, and, therefore, before caveatees' evidence, which appellees contend furnished proof favorable to them. The ruling on that issue is not before us. Nor is the ruling withdrawing the issue of the understanding of the contents of the will. That ruling was erroneous (*Mitchell v. Slye*, 137 Md. 104), but not prejudicial to appellant.

The breaking of the alleged will may work an unfortunate hardship to some of its beneficiaries; but that we cannot avoid. Our function is to review the challenged rulings of the trial court presented by the record.

*Rulings affirmed, and case remanded.*

Offutt, J., concurs in the conclusion.

---

Parke, J., filed the following dissenting opinion:

It will serve no useful purpose for the writer of this dissent to make an analysis of the testimony on the record, so conclusions will be stated. The only witness who expressed an opinion that the testatrix was incompetent at the time she made the will was the family doctor, whose opinion was shown by his testimony in chief and by his cross-examination not to have been based upon any evidence of mental incapacity and, consequently, without any probative force. His

486

testimony, therefore, was insufficient to carry the case to the jury, and, in the judgment of the writer, there was no legally sufficient evidence from which the jury could have found for the caveators on the issue of either mental capacity or undue influence. *Donnelly v. Donnelly,* 156 Md. 81, 84, 85; *Horner v. Buckingham,* 103 Md. 450, 453, 454; *Berry v. Safe Deposit Company,* 96 Md. 60, 61.