ELMER R. HAILE *v.* L. GRACE DINNIS

[No. 54, October Term, 1944.]

*Decided December 20, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Edward H. Burke* and *C. Keating Bowie,* with whom was *Walter R. Haile* on the brief for the appellant.

*Max Sokol* and *Walter M. Jenifer,* with whom were *Jenifer and Jenifer, H. Courtney Jenifer,* and *Dickerson, Nice* and *Sokol* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the Court.

L. Grace Dinnis, the appellee in this Court, filed suit in the Circuit Court for Baltimore County against Elmer R. Haile, executor of the last will and testament of Walter P. Reckord, late of Baltimore County, deceased, the appellant, for services rendered to the said Reckord, at his instance and request, as a secretary covering general office work, and as general housekeeper, including cooking, washing, ironing, housekeeping and nursing from June 11, 1929, to February 14, 1942. The declaration, in one count, alleged that Reckord continually promised to compensate the plaintiff for said services, and in another, that during his lifetime he placed a valuation of Thirty Thousand Dollars thereon, and in both, that he did not pay the plaintiff for them. The case was tried before a jury, resulting in a verdict for the plaintiff in the amount of Twenty-one Thousand, Eight Hundred and Forty Dollars. From the judgment entered on this verdict, this appeal is taken.

There is but one exception in the record. This questions the correctness of the ruling of the trial court in refusing to permit the defendant to offer in evidence two account books showing the collection of rents and other business transactions of Reckord from the year 1928 until July 1, 1942. At the time the books were offered it was stated by counsel for the defendant that the purpose of the offer was in order that the books might be shown to the jury so that they might see by their own inspection that every item in the books was in the handwriting of Reckord. The trial court refused to admit the books, giving as its reason for its action that they might contain inadmissible entries which should not be seen by the jury and that it woud be difficult for the jury to look at the handwriting and not see the entries.

Mr. Reckord died on May 3, 1943. At the time of his death he was eighty-six years old. He had been the owner of the "Union News," a local newspaper published in Towson. The plaintiff had been employed in the office of this newspaper until it was sold in 1927.

From 1927 until his death Mr. Reckord's only business was the management of his several properties, which consisted of an office building, known as the Reckord Building, other business properties, apartment houses and dwellings in Towson, and two farms.

Evidence was offered on behalf of the plaintiff to the effect that the plaintiff, from the summer of 1929 until May, 1941, lived at Sweet Air, about twelve miles from Towson, and that Mr. Reckord had an office and bedroom in the plaintiff's home, which he occupied at times, and that the plaintiff furnished him with meals and did his mending, darning and laundry.

The witness, James Quickly, testified that Mr. Reckord was at the plaintiff's home in Sweet Air three or four times a week and on Sunday. He was an employee of the plaintiff. His daughter, Margery, was employed by the plaintiff in 1938. She testified that Mr. Reckord came to the plaintiff's home on an average of five times a week, arriving between five-thirty and six o'clock in the afternoon and eating supper. Joseph Miller, who worked for Miss Dinnis from 1935 to 1937, testified that he often saw her sitting at a big office desk working and that Mr. Reckord's books were on the desk. Ethel McDade, who was employed by the plaintiff from August, 1929, until the fall of 1930, and again in 1935, often saw Miss Dinnis and Mr. Reckord in the office, where Miss Dinnis was "writing letters on the typewriter and putting notations in the book." She testified further that "she had large books that she would write in, some kind of a ledger"; and that Mr. Reckord was there in the office "most all the time" that Miss Dinnis was making entries in the book. Laura High nursed the plaintiff's mother in plaintiff's home for three weeks in 1940. She testified that during this period Miss Dinnis did some of his secretarial work, writing letters and doing little things for him.

Mrs. Bessie Bottiger testified that she visited Miss Dinnis at her home in Sweet Air about twice a month; that Mr. Reckord had an office on the first floor and that she saw him there; that in the evenings Miss Dinnis

would go in the office and spend an hour or two hours, or sometimes longer, working on the typewriter; that Miss Dinnis was in the florist business and the hooked rug business; and that she did not know what work she was carrying on in the office.

Mrs. May Hughes, a sister of Mrs. Bottiger, was a frequent visitor in Miss Dinnis' home. She testified that the office in the Sweet Air home was equipped with a desk, typewriter and books; that she had seen Miss Dinnis working on the books; that Mr. Reckord told her that Miss Dinnis did his clerical work and collected his rents; and that Mr. Reckord would often be in the office while the plaintiff was doing some of the writing and making the entries in the books.

John A. Hughes, Jr., testified as to two conversations with Mr. Reckord in which Mr. Reckord said that the plaintiff had worked hard for him, "had done all his clerical work," and that he owed her Thirty Thousand Dollars.

Mrs. Theresa H. Kline was called as an expert witness to testify as to the reasonable charge for the clerical and secretarial services rendered by the plaintiff to Mr. Reckord, as outlined in the above testimony. When asked to state her opinion and give her reasons, her reply was as follows: "As I understand from the testimony, she acted as secretary to Mr. Reckord, she looked after his rents and his personal belongings, and was at his call any time of the day or night, and she was excluded from taking other employment, and in view of all that I think she would be entitled to $35.00 a week."

The evidence produced on behalf of the defendant presented a different picture. It was to the effect that during the period of the plaintiff's claim Mr. Reckord first maintained a bedroom in the basement of the Reckord Building; that he then moved to an apartment at 25 West Susequehanna Avenue, in Towson; that he subsequently moved to an apartment in the Washington Apartments in Towson, which he occupied during the fall and winter, spending the spring and summer at his farm

near Sparks; that from 1936 until his illness in February, 1942, he lived at this farm with his son, Edward, and his son's family; that his visits to the Sweet Air home of Miss Dinnis were usually for Sunday dinner; that when he was living in the apartments, he prepared his own breakfast, ate his lunch at his office and had dinner with members of his family; that when he lived on the farm with his son, Edward, he got his breakfast and dinner at the farm and had his lunch at his office; and that after his illness in February, 1942, he lived with his daughter, Mrs. Haile.

Miss Lottie P. Gill, who had been employed as a bookkeeper in Washington for twenty-six years and who had known Mr. Reckord since 1916, testified that she frequently stopped at Mr. Reckord's office when she was in Towson and that while she was there "he was usually working and making entries in his books and things of that sort, accepting rents." She then identified the two account books shown her as the books in which she saw him writing. She further testified that she discussed with Mr. Reckord his system of bookkeeping and that he kept no records except the two account books, his check stubs and his bank deposit books, all of which were in his office at Towson.

Miss Alice M. Starr was Mr. Reckord's tenant on the Sunnyfield Farm for about eight years before his death. She testified that he billed her for the rent once a month, that the bills were in his own handwriting, and that she made the monthly payments at his office. All the rent receipts were offered in evidence.

Mr. John Mays Little, an attorney, had maintained his office in the Reckord Building from 1929. He testified that he always paid his rent to Mr. Reckord, whose office adjoined his, that Mr. Reckord receipted the bills, writing "Thank you" on each one. All the receipted bills were offered in evidence.

Another tenant of the Reckord Building, Mr. Daniel Bradley, produced receipted monthly bills for rent for a period of twelve years, all in Mr. Reckord's handwrit-

ing, which were offered in evidence. He testified that he always paid his rent to Mr. Reckord at Mr. Reckord's office in Towson.

When the defendant took the stand he identified the two account books, previously identified by Miss Gill, and ten bound volumes of check-stubs as the papers which were found in Mr. Reckord's desk and safe and which came into his hands as Executor. He then testified that he knew the handwriting of the plaintiff and that there were no entries in the books or on the check-stubs subsequent to the year 1927 in her handwriting.

There were then offered in evidence certain agreements between the plaintiff and Mr. Reckord relating to the Sweet Air property occupied by the plaintiff, none of which have any bearing upon the question presented by this appeal.

The testimony of Viola Louise Burk was to the effect that she worked for Miss Dinnis from the fall of 1937 to the summer of 1938 and lived continuously in the home during that period; that she, Miss Dinnis and Miss Dinnis' mother were the only persons living there and that there were three beds in the house; and that she never saw any office or room of Mr. Reckord's there.

Both Mrs. Mildred A. Donnell and George A. Crane testified that they were tenants of Mr. Reckord, that they always received rent bills in Mr. Reckord's own handwriting and always paid their rent in person to Mr. Reckord at his Towson office.

The testimony of Miss Weil, pertaining to ninety-four checks, dating from October 27, 1931, to April 2, 1942, in the aggregate amount of Forty-eight Hundred Fifty-four Dollars and Sixty Cents, signed by Mr. Reckord to the order of the plaintiff or deposited in her account, is immaterial in considering the question here presented.

Walter R. Haile is the son of the defendant and the grandson of Mr. Reckord. He is an attorney, practicing with the defendant, and maintains an office in the Reckord Building. He testified that he was familiar with the manner in which his grandfather conducted his busi-

ness; that "frequently tenants would come in with rent and would give him cash together with the bill and he would receipt the bill and return the bill to the tenant"; "that he wrote out all his bills and I have seen him write them"; that "he would take out his grey ledger book which he had which contained accounts of all his tenants. It was from that book that he got out his list of bills and he would write in the book for each tenant as he went along and charged it and then when the bill was paid he would take out the same book and enter in the book just opposite the charge figure, he would enter in the next column the receipt which would close out that particular charge"; that he had two account books, an old one and a new one; that the witness had examined every entry in the two account books and on the check stubs previously referred to and that all the entries were in Mr. Reckord's handwriting. It was at this point that the two account books were offered in evidence and the objection to their admission was sustained by the Court.

While only a part of the evidence is set forth in the record, it is evident from that portion of the evidence of the plaintiff's witnesses which we have outlined above that the emphasis was placed by them upon the clerical and secretarial services rendered by her to Mr. Reckord rather than upon her services as a general housekeeper for him, although the declaration is based upon both. The expert, Mrs. Kline, was called for the purpose of estimating the value of the clerical and secretarial services, and the value placed thereon by her is reflected in the jury's verdict. The evidence offered on behalf of the plaintiff tended to prove that account books or ledgers were kept by Mr. Reckord in an office maintained by him in the home of the plaintiff at Sweet Air and that the plaintiff, acting as his clerk or secretary, made entries therein.

On the other hand, the evidence of the defendant and of his witnesses tended to prove that Mr. Reckord's only office was in the Reckord Building at Towson and that his account books or ledgers were kept in that office, and

that all the entries therein were in his own handwriting. It is significant that the only ledgers produced were the two, which are the subject of the exception in this case.

Upon the conflicting testimony offered in this case, one of the material and pertinent questions for the jury to decide was whether or not the plaintiff did actually keep Mr. Reckord's books and accounts for him as a part of the clerical and secretarial work for which she was seeking compensation from his estate. Would not the best evidence for the jury to consider in reaching the proper answer to this question be the books themselves? We are of the opinion that they would be and that the trial court erred in refusing to admit the books as evidence for the jury to inspect personally.

In *Wigmore's Evidence*, 3rd Ed., Sec. 10, page 293, it is said that: "All facts having rational probative value are admissible, unless some specific rule forbids." The same precept is stated in *Professor Thayer's Presumptions and the Law of Evidence*, 3 Harvard Law Review, 143, as follows: "Unless excluded by some rule or principle of law, all that is logically probative is admissible." In *Nailor v. Bowie*, 3 Md. 251, at page 258, this Court has said that "it is error to reject any (evidence) that is *per se*, pertinent to the issue." Tested by these elementary rules we must hold that the excluded evidence was admissible in this case, unless there is some specific rule which forbids its introduction. It was the best evidence available on the question which the jury had for its decision. As the plaintiff had produced no books from the alleged office in her home at Sweet Air and as the defendant had testified that these were the only books of his decedent which had come into his possession as executor, the reasonable presumption is that, if the plaintiff, in the performance of her duties as clerk and secretary to Mr. Reckord, made entries from time to time in his account books, such entries were made in the books here offered in evidence. There were many exhibits in the case which were admittedly in Mr. Reckord's own handwriting and a casual examination of the 'books

would readily disclose whether all or any of the entries therein were in his handwriting or in the handwriting of another.

But it is urged by the appellee that the books should not have been admitted in evidence because some of the entries therein might be inadmissible as self-serving declarations or otherwise. This view was taken by the trial court. The objection of the plaintiff was a general one to the admission of the account books for any purpose, without pointing out to the Court what portions, if any, of the books were inadmissible. In the case of *Pegg v. Warford*, 7 Md. 582, this Court held that a general objection to testimony which is *per se* applicable to the case for any purpose will not be sustained, even though it might be inapplicable for other purposes. In *Carroll's Lessee v. Granite Manufacturing Co.*, 11 Md. 399, at page 408, it is said: "After evidence has been admitted, and an application is made to the court to exclude it, then the *onus* rests upon the party making the application, to confine his objection to that portion of the evidence which is illegal. And the same rule applies when an offer is made of a mass of evidence, complex in its character, and the whole of it is objected to. In such case, if any part of it be admissible, it is error to exclude the whole. This principle is established by *Budd v. Brooke*, 3 Gill 220. See *Waters v. Dashiell*, 1 Md. 455." The same principle was affirmed in *Jessup v. State*, 117 Md. 119, 83 A. 140. The application of this rule to the instant case would require the plaintiff to confine her objection to those entries, if any, in the account books which were inadmissible. To object generally to the books was insufficient. If there were inadmissible entries in the books they should have been pointed out to the Court, at the time of the objection thereto, so that in admitting the books as evidence for the jury the inadmissible entries could have been deleted, or obscured from the jury's view.

In offering the books for the purpose stated, that is, to show that all the entries therein were in Mr. Reckord's

handwriting, it was not incumbent upon the defendant to show that all the entries were relevant, competent and admissible for every purpose in the trial of the case. Admissibility on any ground would require admission. *Takoma Park Bank v. Abbott,* 179 Md. 249, 19 A. 2d 169; *Rhinehart v. Lemmon,* 181 Md. 663, 29 A. 2d 279.

It is contended by the appellee that, even though we hold that the trial court erred in refusing to admit the books in evidence, we cannot say that its action in so doing was prejudicial to the defendant, because the books or a statement of the contents thereof are not included in the record. We are referred to the cases of *Junkins v. Sullivan,* 110 Md. 539, 73 A. 264, and *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 137 A. 43, on this point. However, in the latter case it was held that in order that the admissibility of a hospital chart be determinable on appeal, as against an objection that the entries therein were heresay, as embodying information furnished by one other than the nurse who made the entries, it was not necessary that the chart be included in the record, though this would be necessary in order to determine the materiality or relevancy of its contents, or whether they represented an expression of opinion by persons not competent. In *Junkins v. Sullivan,* supra, there was involved the materiality of a certain docket entry, and the Court properly held that it could not pass upon its relevancy in view of the fact that it was not embodied in the bill of exception. In the instant case the question is not whether the entries in the account books are relevant and material, but whether they are in the handwriting of Mr. Reckord or of the plaintiff.

We have held that it was error to refuse to admit the books in evidence and in order for us to determine whether or not it was injurious and reversible it is unnecessary for us to consider their contents. It was, therefore, unnecessary to include them in the record. Feeling as we do that the books themselves were the best evidence on a material issue before the jury, it is

our conclusion that their rejection was error and that this error was prejudicial and reversible.

For the reasons stated the judgment will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded, with costs to the appellant.*