## SNOOTS *v.* DEMOREST, ET UX.

[No. 338, September Term, 1968.]

*Decided July 3, 1969.*

The case was argued before HAMMOND, C. J. and MARBURY, BARNES, FINAN and SMITH, JJ.

*Thomas M. O'Malley,* with whom was *James F. Bromley* on the brief, for appellant.

*William H. Clarke* for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant (Snoots) claims that without warning he went to sleep while operating a motor vehicle and that this should excuse him from the judgment entered against him at the suit of the plaintiff appellees, John R. Demorest (Demorest) and his wife. We shall sustain the action of the trial court.

Snoots, Demorest and another on the night of August 13, 1967, had been to motorcycle races. They all had "a couple of beers" which was later defined to be two beers. They stopped on the way home to play the slot machines at which time Demorest and Snoots each had another beer. Although there appears to have been evidence of sleeping on the part of the passengers in the car, the parties testified that Snoots showed no visible effect of his three beers and that he appeared alert. Around midnight they stopped at a restaurant for breakfast. It serves no alcoholic beverages. Snoots there drank coffee in addition to eating. They took one passenger home. Demorest remained on the back seat of the car after that passenger was discharged. About seven or eight miles from the point where this passenger was discharged the accident took place. Demorest's version of it was:

> "We were just driving along and I must have fell asleep, and the next thing I remember was hitting the curb and waking up, going through the windshield."

He claimed that his last recollection before the accident was that Snoots was wide awake, very alert and not having any problem with his driving.

The Snoots version of the accident was:

> "Well, I took the normal route that I would take from Foote's house to mine. And we were going out Good Luck Road and I apparently fell asleep at the wheel, and I woke up in an instant before we hit the curb."

He testified that he felt fine at Foote's house ten or fifteen minutes before the accident, and he had no preliminary signs or indications that he was in a sleepy condition. On cross-examination, however, the record is as follows:

> "Q. You said apparently you fell asleep. You don't know whether you did for sure? A. No, not for sure."

It is the contention of Snoots here that the trial court erred in failing to rule as a matter of law that Demorest failed to establish negligence on the part of Snoots, "in that the evidence of record established that appellees' injuries were caused when, without any reason to foresee or anticipate that he might do so, appellant suddenly fell asleep while operating the involved automobile."

Snoots relies on a recent decision of the Superior Court of Connecticut in *Shanley v. Shanley*, 27 Conn. Sup. 417, 241 A. 2d 543 (1968) denying a plaintiff passenger's motion for summary judgment in view of the fact that the defendant driver's affidavit tended to support the driver's defense that he fell asleep and his car swerved off the road and struck a pole. The court there said:

> "While the rule of law relative to the 'sleeping motorist' has been subjected to criticism, a majority of the jurisdictions agree that in automobile accident litigation if, 'without any premonitory signs of drowsiness, you were suddenly deprived of consciousness by the sandman or Morpheus, you were not at fault and were not

an actor' and thus legally incapable of incurring liability. Kaufman & Kantrowitz, 'The Case of the Sleeping Motorist,' 25 N.Y.U.L. Rev. 362. '[B]ecause negligence presupposes a voluntary act, the actor [the sleeping motorist] cannot be negligent for what he does or fails to do while he is unconscious.' 2 Harper & James, Torts § 16.7, p. 921. There must be an appreciation by the alleged tort-feasor of the fact that he is sleepy. See Kakluskas v. Somers Motor Lines, Inc., 134 Conn. 35, 39, 54 A. 2d 592. To put it differently, the defendant driver must be shown to be a 'responsible agent' in directing the course of the car, that he was negligent in exercising control, and that this negligence was a proximate cause of the collision. Badela v. Karpowich, 152 Conn. 360, 363, 206 A. 2d 838." 241 A. 2d at 544.

Snoots also relies on the decision in *Shirks Motor Express v. Oxenham,* 204 Md. 626, 106 A. 2d 46 (1954) wherein this Court said:

"We assume, without deciding, that if, without contradiction or effective challenge, there had been shown that the driver's sudden illness preceded the accident, the verdict should have been directed for the appellant. That is not this case. Here, there is a very effective challenge to the appellant's position as to the time of the onset of the unexpected illness." *Id.* at 634.

In *Smack v. Jackson,* 238 Md. 35, 207 A. 2d 511 (1965) Judge Horney said for this Court:

"Under Maryland Rule 552 a, a party is not entitled to a directed verdict in his favor unless the facts and circumstances are such as to permit of only one inference with regard to the issue presented." (citing cases) *Id.* at 37.

We are not obliged to determine to what degree, if at all, the "sleeping motorist" rule should apply in Maryland. From the lips of the defendant one may draw the inference that he was asleep or that he was not asleep. Since there was more than one inference that could have been drawn, it would have been improper to direct a verdict in his favor. Snoots did not object to the charge to the jury nor did he request any additional instructions. Accordingly, we find no error on the part of the trial judge.

*Judgment affirmed; appellant*
*to pay the costs.*