MAURICE D. BECKNER, JR. ET UX. *v.*
WALTER J. CHALKLEY, JR. ET AL.

[No. 97, September Term, 1973.]

*Decided October 26, 1973.*

240

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Clarence M. Thomas* for appellants.

*Ludd R. Farr, Jr.,* for appellee.

GILBERT, J., delivered the opinion of the Court.

In this case, a jury in the Superior Court of Baltimore City, presided over by Judge Basil A. Thomas, rendered a verdict in favor of appellee Blom, a passenger in the appellant Beckner's motor vehicle, against both Beckner and the appellee Chalkley who, at the time of the automobile accident leading to this litigation, was a Baltimore City police officer operating an emergency vehicle. The same jury in Beckner's and his wife's suit against Chalkley found for Chalkley. The judgments on the two verdicts are challenged in this Court.

In Beckner's view, the trial judge committed three errors, *scilicet:*

I. Exclusion of testimony from an "expert engineer" employed by Beckner.

II. Failure to instruct the jury that in order for it to find Beckner contributorily negligent it must first determine that he had a reasonable opportunity to "respond or react to notice of the approach of the emergency vehicle."

III. Not granting Beckner's motion for a directed verdict at the conclusion of the passenger's suit against Beckner.

The testimony discloses that at approximately 12:20 a.m.

on August 9, 1970, Beckner was operating his vehicle north on Calvert Street, a one-way north bound street in Baltimore City, and at that time he was accompanied by Donald J. Blom, who was riding in the right front seat of Beckner's automobile. As Beckner entered the intersection of Calvert Street and East 28th Street, a one-way east bound street, a Baltimore City police car, operated at a high rate of speed easterly on 28th Street, also entered the intersection and collided with the left front side of the Beckner vehicle. Beckner's car was driven into a utility pole and was demolished. Both he and Blom sustained personal injuries.

Beckner, Blom, and another witness called by Beckner, all testified that Beckner had entered the intersection on a green light, and that they did not hear a siren emanating from the police vehicle until a split second immediately prior to the impact. Beckner said that his automobile radio and air conditioner were turned off, and his car windows were lowered about "six inches all the way around." Each witness for Beckner denied the presence of other moving vehicles on Calvert Street. Beckner stated that his rate of speed on Calvert Street was 30 to 35 miles per hour. The speed limit on Calvert Street is, however, 25 miles per hour.

Chalkley stated to the jury that he had activated the siren the moment that he had received a radio call to assist another police officer involved in a shooting. Chalkley, at that time, was in a gasoline service station located at 29th Street and Remington Avenue, which is several blocks from the situs of the accident. It was undisputed that the flashing dome light on the police vehicle was in operation. Chalkley acknowledged that he entered the intersection with the red light against him, but he said that as he approached the intersection he slowed down, observed the signal for north bound traffic on Calvert Street change to amber, and simultaneously saw that a vehicle, north bound on Calvert Street, had come to a stop, apparently in response to the sound of the siren located on the police vehicle or because of the amber light. Chalkley told the jury that after he had observed a vehicle stop at the intersection, he then proceeded to enter the intersection, and Beckner's car came into the

intersection from Calvert Street on the east, or right hand side, of the stopped automobile. The identity of the operator of the halted vehicle was never ascertained.

A witness called on Chalkley's behalf related to the jury that the police vehicle had passed him while he was east bound on 28th Street, and that the siren and flashing light were in operation. According to the witness, he followed the police vehicle because of his curiosity. He said that when Chalkley entered the intersection of Calvert and 28th Streets the police cruiser did so on a green light. Another witness called on behalf of Chalkley testified that although he heard a siren it was not very loud. He further said that the accident occurred 10 to 20 seconds after he first heard the police siren.

The jury's verdict in favor of Blom against both Chalkley and Beckner is indicative of the jury's findings, on the facts, that both Chalkley and Beckner were negligent. Their verdict in favor of Chalkley in Beckner's suit against Chalkley is consistent therewith.

## I.

During the course of the trial, Beckner called a mechanical engineer who, after stating his qualifications and being subjected to cross-examination thereon, was allowed to testify as an expert. The expert said that he had gone to the scene of the accident approximately nine months later, and he had determined the points where both Beckner and Chalkley could have first seen each other's vehicle. The evidence sought from the expert was not intended to establish when Beckner and Chalkley actually did first see each other, but rather, when considering the obstruction to vision, they first had the ability to see each other. The expert further stated the distances that vehicles would travel at speeds ranging from 30 to 60 miles per hour in intervals of 10 miles per hour, as well as the time it would take from the moment the respective drivers could have first seen each other to the point of impact. The observation by the expert of the area where the accident occurred was conducted during the daytime. No calculations were made by the

expert as to the distance one could see the reflection of light from the headlamps, or if one could see it at all. No testimony was offered concerning the degree of illumination present in the area as a result of street lighting, nor was there any evidence as to the projection in feet of light from the headlamps of the motor vehicles.

On motion by Chalkley, Judge Thomas struck the testimony of the expert. He said:

> ". . . There were calculations of time, distances and speeds, which were all based in this case on what would have been the situation if the accident occurred during the daylight hours. The accident occurred at night and the expert witness' testimony failed to take into account the circumstances which existed during the hours of darkness. Specifically, his calculations of time, distances and speeds fail to consider the headlamps of each of the cars and the extent of which illumination of such headlamps at the time of the accident alerted the respective other party. . . . [T]he conclusions reached by the expert witness or the calculations based on daylight hours would not appear to be relevant under these circumstances. For this reason the motion is granted with the exception [of] the expert testimony as to the amount of feet traveled per second. . . ."

An exhibit prepared by the expert and previously introduced was likewise stricken.

In support of his contention that Judge Thomas erred in striking the expert's testimony, Beckner relies upon *Nailor v. Bowie*, 3 Md. 251 (1852); *Love v. Love*, 158 Md. 481, 148 A. 814 (1930); and *Haile v. Dennis*, 184 Md. 144, 40 A. 2d 363 (1944). Those cases are, however, inapposite and afford Beckner no assistance.

In order to avoid the holding set forth in *Smith v. State Roads Comm'n*, 240 Md. 525, 537, 214 A.2d 792, 798 (1965) that "evidence of experiments performed out of court to be admissible . . . must have been made under similar

conditions and like circumstances to those existing in the case at issue." Beckner styles what the expert did as an "investigation," and not an experiment. We shall not engage in such semantics. By whatever name Beckner chooses to call the observations made by the expert, they are, in our view, an "experiment" and subject to the rule of *Smith, supra.*

Judge McWilliams, in *Smith, supra,* thoroughly discussed *Richardson v. State,* 90 Md. 109, 44 A. 999 (1899), and *Keyser v. State,* 95 Md. 96, 51 A. 1057 (1902). The clear message of *Smith, supra, Richardson, supra,* and *Keyser, supra,* is that unless a witness has actually made the experiment "under . . . similar conditions and circumstances," he is not competent to state his opinion. The test in the instant case was performed in daylight hours. The accident occurred at 12:20 a.m. What a motorist may observe in the daylight has no relation to what he may see at the same location during night hours. No allowance was made by the expert as to the projection of the headlights of each vehicle. There is nothing in the record that informs us as to what, if any, dissipation of the intensity of the reflection of the headlights may have occurred as a result of existing illumination of the intersection. We are not advised as to what effect, if any, the flashing dome light on the police vehicle may have had on its visibility, nor are we informed of the length of the light beam projecting from the lamps of the respective vehicles.

As was stated by this Court in *Murphy v. Bd. of County Comm'rs,* 13 Md. App. 497, 284 A. 2d 261 (1971), quoting from *Spence v. Wiles,* 255 Md. 98, 102-03, 257 A. 2d 164, 166-67 (1969), at 504-05:

> "The rule is that before a witness is permitted to offer an expert opinion, it must be shown that he possesses both the necessary qualifications and also the factual information necessary to form such an opinion. . . . The qualifications of a proposed expert witness are a matter for the trial court to pass upon in the first instance, and unless such ruling is clearly erroneous or a clear abuse of discretion it will not be reversed on appeal."

*See, also Nizer v. Phelps*, 252 Md. 185, 249 A. 2d 112 (1969); *Smith v. State Roads Comm., supra, Christ v. Wempe*, 219 Md. 627, 150 A. 2d 918 (1959); *Owens v. Creaser*, 14 Md. App. 593, 288 A. 2d 394 (1972).[1] We think Judge Thomas properly struck from the evidence that portion of the "expert engineer's" testimony that pertained to the question of when one driver should have become aware of the presence of the other, in view of the fact that the expert's opinion was not grounded upon an experiment made under conditions and circumstances similar to those that existed at the time of the accident.

## II.

Beckner urged the trial judge to grant an instruction to the effect that Beckner's duty to yield the right of way to an emergency vehicle was predicated upon notice of the approach of the emergency vehicle, and a reasonable opportunity on the part of Beckner to respond thereto. Judge Thomas declined to give that specific instruction. He advised the jury that the Maryland law applicable at the time, then Md. Ann. Code Art. 66½, § 214,[2] provided:

> ". . . [T]he prima facie speed limitations and provisions relative to the right-of-way, stopping at through highways, rules of the road, traffic control devices and signals . . . shall not apply to authorized emergency vehicles when responding to an emergency call, and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall these provisions protect the driver of any such vehicle from the

---

1. Reversed on other grounds. *See* Creaser v. Owens, 267 Md. 238, 297 A. 2d 235 (1972).
2. Md. Ann. Code Art. 66½ was repealed and reenacted by Ch. 534, Laws of 1970. Apparently old § 214 was replaced by Md. Ann. Code Art. 66½, § 11-106.

consequences of a reckless disregard of the safety of others."

The court further instructed the jury that if they were to find:

". . . from the evidence that [Chalkley] failed to give an audible signal when responding to the emergency call, then you are instructed that he was governed by all the rules of the road and [he] was required to obey the automatic signal at the corner of 28th Street and Calvert Street. If you find from the evidence that [Chalkley] operated his vehicle in such a manner as to disregard the safety of other users of the highway, or in reckless disregard of their safety, such actions constitute evidence of negligence on his part."

The jury was also informed that the operator of an emergency vehicle, upon approaching a traffic control device, should slow down but may then proceed cautiously [3] through the area governed or controlled by the traffic device. The jury was told that if they found from the evidence that Chalkley did not slow down or did not proceed cautiously through the intersection, that such failure to slow down or proceed cautiously was evidence of negligence. The jury was also instructed that:

". . . [U]pon the immediate approach of an authorized emergency vehicle, when the driver is giving an audible signal, by siren, exhaust whistle or bell,[4] the driver of every other vehicle shall yield

---

**3.** This portion of the court's instruction was taken from then Md. Ann. Code Art. 66½, § 183 (b) now embodied in Md. Ann. Code Art. 66½, § 11-106.

**4.** During the course of the trial, an employee of the Department of Motor Vehicles testified that it was his job to approve horns, sirens and other warning devices for placement upon vehicles. Then Md. Ann. Code Art. 66½, § 293 (b) provided in part:

". . . Any authorized emergency vehicle may be equipped with a siren, whistle, or bell, capable of emitting sound audible under normal conditions from a distance of not less than 500 feet and of a type approved by the Department, [the Department of Motor

> the right-of-way and shall immediately drive to a
> position parallel to, and as close as possible, to the
> right hand edge or curb of the highway clear of any
> intersection, and shall stop and remain in such
> position until the authorized emergency vehicle has
> passed, except when otherwise directed by a police
> officer." [5]

The jury was reminded that if they found Chalkley had not given an audible signal so as to notify those vehicles in the intersecting street of his immediate approach, then his (Chalkley's) actions constituted negligence. The instructions were that the lack of an audible signal relieves the operators of vehicles on intersecting streets, if they have a green light, from the duty to yield the right of way to an authorized emergency vehicle. The term "audible signal" was explained to the jury.

In this Court, Beckner points to *Baltimore Transit Co. v. Young,* 189 Md. 428, 56 A. 2d 140 (1947), wherein the Court of Appeals said, at 434:

> ". . . Of course, to impose upon a traveller on a
> highway the duty of giving the right of way to an
> authorized emergency vehicle, notice to him must
> be given of its approach so that he has a reasonable
> opportunity to stop or otherwise yield the right of
> way."

What the Court of Appeals said in *Baltimore Transit Co. v. Young, supra,* is that an emergency vehicle must sound its signal at a distance far enough removed from other vehicles so as to grant the other vehicles a reasonable opportunity to

---

Vehicles of this state] but such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law. . . ." (*See* present Art. 66¹/₂, § 12- 401 (d)).

The employee said that the sirens of the Baltimore City Police Department, Baltimore City Fire Department, and the Maryland State Police have never been approved because no application has ever been made for such approval.

5. This instruction is a verbatim recitation of then Md. Ann. Code Art. 66¹/₂, § 235 (a). The section now appears in substantially the same form as § 11-405 (a).

248

react to that signal. In short, the emergency vehicle is not to sound its signal for the first time just before imminent collision, or for the first time in such proximity to another vehicle that there is simply no opportunity for the other motorist to comply with the law.

The Court of Appeals and this Court have consistently held that if jury instructions, when read as a whole, clearly set forth the applicable law, there is no reversible error. *Nizer v. Phelps, supra; Alston v. Forsythe,* 226 Md. 121, 172 A. 2d 474 (1961); *Lemons v. Chicken Processors,* 223 Md. 362, 164 A. 2d 703 (1960); *Kable v. State,* 17 Md. App. 16, 299 A. 2d 493 (1973); *Shotkosky v. State,* 8 Md. App. 492, 261 A. 2d 171 (1970). One of the reasons for such a rule is that sometimes a trial court will err in some of the legal propositions announced to the jury, but the errors are harmless. "Wrong directions which do not put the traveler out of his way, furnish no reason for repeating the journey." *Cherry v. Davis,* 59 Ga. 454, 456 (1877). Judge Thomas's instructions, when considered in their entirety, set forth the relevant law.

The jury was informed that the duty imposed on a motorist upon the approach of an emergency vehicle to pull to the right hand edge of the road was mandated only if there were an audible signal. The testimony was in conflict as to whether, *vel non,* an audible signal had in fact been given. That conflict was for the jury to resolve. We think it readily apparent that the jury concluded that Chalkley was sounding an audible signal but did not proceed through the intersection with caution, thus constituting negligence on his part. The jury also found that Beckner, notwithstanding his having the green light, either did not hear, or ignored, the siren of the police emergency vehicle, was exceeding the speed limit, and was contributorily negligent.

III.

Beckner argues that Judge Thomas should have granted his motion for a directed verdict at the conclusion of Blom's case. When Beckner's counsel made the motion, the trial judge reserved ruling which, under Maryland Rule 552 c,

"constitutes a denial of the motion." A motion for a directed verdict should not be granted unless the facts and circumstances are such that only one inference, with regard to an issue, may be drawn, *Snoots v. Demorest*, 254 Md. 572, 255 A. 2d 12 (1969); *Smack v. Jackson*, 238 Md. 35, 207 A. 2d 511 (1965). The test applied in ruling on a motion for directed verdict is that the court shall consider all evidence and inferences rationally drawn therefrom in the light most favorable to the party against whom the motion is made. *Wheeler v. Katzoff*, 242 Md. 431, 435, 219 A. 2d 250, 252 (1966); *Miller v. Michalek*, 13 Md. App. 16, 17, 281 A. 2d 117, 118 (1971).

The evidence in this case, viewed in the light most favorable to Blom, was sufficient, in our view, to deny Beckner's motion for directed verdict in Blom's case against him.

*Judgments affirmed.*
*Costs to be paid by appellants.*