597 A.2d 1042

**ST. JAMES CONSTRUCTION COMPANY, et al.**

v.

**James MORLOCK, et ux.**

**No. 1969 Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 5, 1991.

Certiorari Denied Feb. 21, 1992.

218

George F. Obrecht, III (Obrecht and Obrecht, on the brief), Baltimore, for appellants.

Francis J. Collins (Kahn & Collins, P.A., on the brief), Baltimore, for appellee.

Argued before GARRITY, DAVIS and HARRELL, JJ.

HARRELL, Judge.

Appellants and cross-appellees, St. James Construction Company (St. James) and Edward J. Dyas, Jr. (Dyas), appeal from a judgment entered against them after a jury trial in the Circuit Court for Anne Arundel County (Lerner, J. presiding). Appellees and cross-appellants, James and Nancy Morlock, brought an action against St. James pursuant to *Council of Co–Owners v. Whiting–Turner,* 308 Md. 18, 517 A.2d 336 (1986). This case gave property owners an action in negligence against an architect or builder, regardless of whether privity existed between them, for recovery of the reasonable cost of correcting a dangerous condition resulting from the negligent design or construction of a building.

### Facts

In April 1988, two years after purchasing their house from Francis J. Black, the original owner and occupant, the Morlocks discovered that a brick veneer wall over the garage of the house had severe cracks and holes in it. The house was constructed by St. James in 1978. The Morlocks consulted an engineer, who informed them that the condition of the brick was such that the wall was in danger of collapsing at any time. The engineer advised them to remove the brick as soon as possible. This they did. Later the Morlocks replaced the brick with a wood veneer, due in part to their inability to afford the projected cost of restoring the wall to its original brick condition. The cost of repairing the wall with the wood veneer was $6,670.83.

On 3 June 1988, the Morlocks filed an action against St. James, Black, and Dyas, St. James' President, who, according to testimony at trial, chose the materials for and designed the wall's wooden support structure. Later amend-

ments to their complaint added as defendants Michael D. McNeally, who supervised the construction of the house for St. James, and Harold Laque, a carpenter hired by Black in 1981 to build a closet which extended beneath the brick veneer wall.

The case was tried before a jury between 25 and 27 September 1990. Much of the testimony at trial concerned the reason or reasons for the wall's failure. The Morlocks, St. James, and Laque had separate engineers who testified as expert witnesses for them on this issue. The engineers variously placed the blame on: (1) the use of wood rather than masonry to support the brick veneer wall; (2) other inadequacies in the design and construction of the wall and its support structure, such as failure to layer or "step" the brick so that each brick sat on a flat surface and failure to join the wooden support structure together properly; and (3) Laque's removal of a number of the vertical support beams in the wooden framework beneath the wall in 1981. All of the engineers, as well as McNeally, agreed that it was not normal building practice to support a masonry wall with wood. There was also testimony that St. James' choice of building materials was not in conformity with applicable building regulations in Anne Arundel County.

The trial judge granted McNeally's motion for judgment at the close of all the evidence. The rest of the case went to the jury, which ultimately returned a verdict absolving Black and Laque from liability, and imposing liability upon St. James and Dyas. The jury assessed damages against the latter two in the amount of $49,172.07. The trial judge, believing that the jury had somehow duplicated the figure $2,912.07 in its verdict, offered the Morlocks the choice of either agreeing to remit that portion of the jury's award or facing a new trial. The Morlocks, evidently preferring the lesser of two evils, accepted the reduction. A judgment of $46,260 was entered against St. James and Dyas on 22 October 1990. We will elaborate on the facts of this case as

necessary in our discussion of the individual issues presented.

St. James and Dyas present three issues on appeal:

I. Whether the imposition of personal liability upon Dyas was proper;

II. Whether the circuit court erred in allowing the Morlocks to present testimony at trial as to the cost of restoring the brick veneer wall to its original condition; and,

III. Whether the circuit court erred in taking judicial notice of two national building standards as the applicable building regulations in Anne Arundel County at the time the house was built.

On cross-appeal the Morlocks present two issues:

IV. Whether the circuit court erred in denying their motion under Md.Rule 2–424(e) for attorney's fees and other expenses; and,

V. Whether the circuit court erred in granting remittitur.

### I.

St. James first challenges the imposition of personal liability for the negligent design and construction of the Morlocks' house upon Edward J. Dyas, President of St. James.

 In *Council of Co–Owners v. Whiting–Turner,* 308 Md. at 18, 517 A.2d 336, the Court of Appeals held that builders and architects could be held liable in tort for damages suffered by parties who are not in contractual privity with them where their negligent conduct has created a risk of personal injury. The Court stated:

> We hold that privity is not an absolute prerequisite to the existence of tort duty in this type of case, and that the duty of builders and architects to use due care in the design, inspection, and construction of a building extends to those persons foreseeably subjected to the risk of

personal injury because of a latent and unreasonably dangerous condition resulting from that negligence. Additionally, we hold that where the dangerous condition is discovered before it results in injury, an action in negligence will lie for the recovery of the reasonable cost of correcting the condition.

*Id.* at 22, 517 A.2d 336. St. James' liability for the negligent design and construction of the Morlocks' house was based upon the cause of action announced in *Council of Co-Owners.* Dyas' personal liability was founded upon this cause of action as well, coupled with the well established rule that an officer of a corporation may be held personally liable for torts committed by the corporation if the officer "either *specifically directed, or actively participated or cooperated in,*" the corporation's negligent conduct. *Fletcher v. Havre de Grace Fireworks Co.,* 229 Md. 196, 201, 183 A.2d 386 (1962) (emphasis in original).

■ Dyas contends that the latter rule should not have been applied in the case *sub judice.* It asserts that the rule set forth in *Council of Co-Owners* is a "narrowly circumscribed exception" to the general requirement of privity in this type of case, and that "subordinate tiers of privity between corporate 'builders' and their officers and employees" should be maintained. We disagree. "The general rule is that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body." *Tedrow v. Deskin,* 265 Md. 546, 550, 290 A.2d 799 (1972). *Cf. A.B. Corp. v. Futrovsky,* 259 Md. 65, 79, 267 A.2d 130 (1970) (in contract cases, corporate officers may be shielded from personal liability, except where fraud is involved). Nothing in the *Council of Co-Owners* decision suggests that the rule should not be applied to the officers or agents of corporate builders. Indeed, examination of the purpose underlying the Court's abandonment of the privity requirement leads to the conclusion that the general rule *should* apply in actions brought under *Council of Co-Owners.* The Court, in sub-

stituting foreseeability for contractual privity as the princi-
pal determinant of duty where the risk created is one of
personal injury, sought to impose liability on those best able
to avoid such risks. *See Council of Co–Owners*, 308 Md. at
31, 517 A.2d 336, quoting *MacPherson v. Buick Motor
Company*, 217 N.Y. 382, 111 N.E. 1050 (1916) ("We have
put aside the notion that the duty to safeguard life and
limb, when the consequences of negligence may be fore-
seen, grows out of contract and nothing else."). Achieve-
ment of this object would obviously be hampered, if not
prevented completely, if privity were to be maintained as a
barrier to imposing liability on those personally responsible
for the tortious conduct of builders or architects. We hold,
therefore, hold that the general rule that corporate officers
or agents who either specifically direct or actively partic-
ipate in corporate torts applies in actions brought under the
*Council of Co–Owners* rule.[1]

Dyas also contends that "there was no evidence
upon which reasonable minds could conclude that Dyas
committed a negligent act because [the Morlocks] did not
establish a standard of care which might have applied to
Dyas as a corporate officer or employee." This contention
is also without merit. We see no reason, nor does Dyas
suggest any, why a different, presumably lower standard of
care should be applied to Dyas as a corporate officer than
was applied to St. James itself. Rather, by choosing the
materials that were to be used in the construction of the
brick veneer wall's supporting structure, Dyas took upon
himself the same standard of care that applied to St. James.

---

1. St. James also asserts that personal liability can only be imposed
upon corporate officers or agents when their action "results directly
in some trespassory invasion of another's real property with resultant
physical harm." Neither the Maryland cases cited by St. James, nor
the language it has carefully culled from two treatises, provide much
support for this assertion. We consider the above-quoted language
from the *Fletcher* and *Tedrow* cases to be sufficient to refute it. *See
also Gai Audio of New York v. C.B.S.*, 27 Md.App. 172, 206, 340 A.2d
736 (1974).

 Dyas' final contention with respect to his personal liability is that there was insufficient evidence that his involvement in the design and construction of the wall proximately caused its failure to justify submitting the question of his liability to the jury. We disagree. All that is necessary to allow a plaintiff's case to go before a jury is that the evidence establish "a reasonable likelihood or probability" that the defendant's act caused the plaintiff's injury or damage. *Peterson v. Underwood,* 258 Md. 9, 17, 264 A.2d 851 (1970). *See also McSlarrow v. Walker,* 56 Md. App. 151, 159, 467 A.2d 196 (1983) ("The matter of causation need not be established by direct and positive proof to an absolute certainty."). Examination of the record reveals that both the Morlocks' engineer and Laque's engineer testified at trial that the use of wood to support the masonry wall was a cause of the wall's failure. While their testimony also identified other possible concurrent causes, it was certainly sufficient to support a reasonable conclusion that the use of wood was responsible for the wall's condition. There was also testimony that Dyas directed that wood be used to support the wall. The trial court was therefore correct in letting the jury determine the issue of Dyas' liability.

## II.

 St. James and Dyas next argue that under *Council of Co–Owners* the Morlocks' recovery should have been limited to $6,670.83, the actual cost of repairing the wall. We agree. The Court stated in *Council of Co–Owners* that where an unreasonably dangerous condition is discovered in a building, an action in negligence will lie against the architect or builder "for the recovery of *the reasonable cost of correcting the condition." Council of Co–Owners,* 308 Md. at 22, 517 A.2d 336 (emphasis added). The Court thus expressly limited the measure of damages in such actions. The Morlocks elected to repair the wall by replacing the brick veneer with a wood one. The repairs the Morlocks undertook indisputably corrected the dangerous condition of

the wall. The Morlocks were, therefore, entitled only to the cost of replacing the brick with a wood veneer.

We concur with the Morlocks' contention that homeowners should not necessarily be limited in actions brought under *Council of Co–Owners* to the least expensive method of repairing a dangerous condition, if such method, while correcting the dangerous condition, results in significant deterioration of the quality or value of the house. The question is one of reasonableness. *Id.* Despite the added expense, restoring the brick wall to its original condition may well have been just as reasonable as putting up a wood veneer. If so, and had the Morlocks elected to restore the wall to its original condition, they may have been entitled to a corresponding amount of damages. The Morlocks did not do so, however. Consequently, they cannot recover the much higher cost of restoring the brick veneer wall to its original condition.

■ St. James and Dyas specifically assign as error the circuit court's admission of evidence of the projected cost of restoring the brick veneer wall to its original condition.[2] Since the ostensible purpose of introducing this evidence was to establish the reasonableness of the cost of repairing the wall with a wood veneer,[3] we cannot assign error to the circuit court's *admission* of the evidence *See Haile v. Dinnis,* 184 Md. 144, 40 A.2d 363 (1945) (all facts having

---

**2.** This cost was estimated by the Morlocks' engineer as $32,500, plus another $10,000 to repair the "bowing" of brick in adjacent areas of the house due to the failure of the brick veneer wall.

**3.** Examination of the record reveals that the Morlocks' actual motive was most likely to present the jury with evidence of the diminution of value of their house due to the replacement of the failed brick veneer wall with a wood veneer one. The trial judge had previously excluded James Morlock from testifying on the diminution of value of the house on the ground that he was not qualified to do so. We do not address the propriety of this decision, as the Morlocks have not assigned it as error in their cross-appeal. Due to the procedural posture of this case, we also do not reach the larger question of whether economic damages such as diminution in value of a house are compensable under *Council of Co–Owners.*

rational probative value are admissible, unless some specific rule forbids). The jury, however, should only have been allowed to consider this evidence in relation to the reasonableness of the cost of the actual repairs the Morlocks made to the wall. St. James specifically requested such an instruction and, therefore, this issue is properly before us. *See S & S Building Corp. v. Fidelity Storage Corp.*, 270 Md. 184, 189, 310 A.2d 778 (1973) (where party to suit requested no instruction to jury as to right to recover damages for lost income and took no exception to instructions given, the point was not before the appellate court for review). We hold that the circuit court erred in not instructing the jury on the limited purpose for which it could consider the evidence regarding the cost of restoring the brick veneer wall to its original condition. *Cf. Moats v. Ashburn*, 60 Md.App. 487, 483 A.2d 791 (1984) (failure to give appropriate jury instructions held reversible error).

### III.

■ St. James' and Dyas' final argument is that the circuit court erred in taking judicial notice of two national building standards as the applicable building regulations in Anne Arundel County at the time the Morlocks' house was built. The circuit court took judicial notice of 1975 editions of the Building Officials & Code Administrators (BOCA) Basic Building Code and the One and Two Family Dwelling Code, both of which are nationally recognized model building regulations and both of which were specifically adopted in an amended form by Anne Arundel County. *See* Anne Arundel County Code § 3–200 (1977). St. James' and Dyas' argument is based on two contentions: (1) that the Morlocks failed to establish at trial precisely when the house was built, making it impossible to determine which building standards were applicable to its design and construction of the Morlocks' house; and (2) that the circuit court did not follow the procedure provided in Md.Cts. & Jud.Proc.Code Ann. § 10–203(a) (1989). This provision states in pertinent part that:

> The public laws, ordinances, regulations, and resolutions approved and enacted by a county or municipal corporation of the State ... shall be judicially noticed or read into evidence from the printed volumes or from a true copy of an amendment published by the authority of the county or municipal corporation.

The latter contention is based upon the fact that the circuit court took judicial notice of copies of the national building standards rather than the County Code itself, thereby making it difficult to determine whether and how the national building standards had been amended in their adoption by Anne Arundel County. At trial, however, St. James and Dyas objected to the circuit court's taking judicial notice of the standards solely on the basis of the contention that the Morlocks had failed to establish when the house was built. As a result, the second contention was not properly preserved for appeal, and we therefore do not consider it. *See Ocean Plaza Joint Venture v. Crouse Construction Co., Inc.,* 62 Md.App. 435, 452, 490 A.2d 252 (1985) ("If no reasons are specified [when entering an objection], the party is entitled to general review of the objection on appeal, but if specific grounds are presented, only those bases may be considered on appeal—all other grounds are waived.") (Citations omitted.)

▮ As to the first contention, we find it to be without merit. At trial the original owner of the house, Black, testified as follows:

Q: ... when did you move into the house we're all talking about? What year?

A: I believe it was 1978.

\* \* \* \* \* \*

Q: When you moved into this house in 1978, was it completed?

A: I would [estimate] about ninety percent completed.

Q: So there was [sic] still some things to be done?

A: Yes, sir. Carpeting put in and probably the knobs on the doors and things of that nature.

St. James and Dyas did not attempt to challenge Black's testimony either as to the year he moved in or as to the degree to which the house was completed at the time, despite the fact that, as the builder of the house, they presumably had knowledge of when the house was built. Clearly, this testimony was sufficient to establish when the house was built (the fact that carpeting and doorknobs remained to be installed is insignificant) and, consequently, what standards were applicable at the time of construction.

## IV.

We turn next to the issues presented by the Morlocks. They first argue that the circuit court erred in denying their motion for attorney's fees and other reasonable expenses under Rule 2–424(e) (1991), which provides for payment of such expenses as a penalty for failure to make admissions under certain circumstances.[4] The motion complained that St. James and Dyas refused to admit to 15 of the 71 requests for admissions originally propounded by the Morlocks. The trial judge apparently denied the motion because he felt that St. James' and Dyas' refusal to make the admissions was "in good faith." They contend both that the trial judge applied an incorrect standard in ruling on the motion and that he abused his discretion in denying it.

We will not consider whether the trial judge applied the right standard in ruling on the Morlocks' motion because our examination of the record reveals that no attor-

---

4. Rule 2–424(e) provides as follows:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under this Rule and if the party requesting the admissions later proves the genuineness of the document or the truth of the matter, the party may move for an order requiring the other party to pay the reasonable expenses incurred in making the proof, including reasonable attorney's fees. The Court shall enter the order unless it finds that (1) an objection to the request was sustained pursuant to section (c) of this Rule, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to expect to prevail on the matter, or (4) there was other good reason for failure to admit.

ney's fees or other expenses were properly awardable under Rule 2–424(e). *See Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979) ("where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court ..., an appellate court will affirm.").

Requests for admissions of fact serve a limited but useful function. Because of their misuse, however, parties do not obtain a great deal of satisfaction from them as a discovery device. Regularly the propounding party seeks to obtain more of an admission than that to which he is entitled and consequently the answer given is all but useless. The purpose of the rule is not to press known discovery requests. Rather, it is intended to eliminate from trial those matters over which the parties truly have no dispute ... The authenticity of documents, the corporate status of parties, and the undisputed foundation for evidence are but examples.

Neimeyer and Richards, *Maryland Rules Commentary* 234–35 (1984).

Of the 15 requests for admissions which the Morlocks were concerned with in their motion, all but two involved ultimate issues or facts, rather than primary evidentiary facts over which the parties had no dispute and which would have been an appropriate subject for requests for admissions. Request number 28, for example, states that "[i]n the spring and summer of 1988, the brick above the garage, prior to its removal, *created an unreasonable risk of bodily injury* due to its possible sudden failure and collapse." (Emphasis added.) Request number 31 asserts that "[i]t is *negligent* to support the amount of brick which was above the garage on the trusses which were used to support the same." (Emphasis added.) Many of the requests additionally contained terms of such an ambiguous nature that no attorney worth his or her salt would allow their client to admit to them. Request number 11, for instance, states that "[t]he front and rear brick facades of the [Morlocks'] house *are not perfectly vertical.*" (Empha-

sis added.) Request number 14 asks whether "[t]he brick above the garage *should not have been* supported upon a wood truss." Thus, to paraphrase the *Maryland Rules Commentary,* in all of these requests the Morlocks were seeking to obtain more than they were entitled to. As a result, they deserved whatever responses they received.

■ As for the two requests for admissions which did not go to ultimate facts or issues, or contain inherent ambiguities, these involved the applicable building regulations in Anne Arundel County at the time the house was constructed. Counsel for the Morlocks was successful in persuading the trial judge to take judicial notice of the BOCA Code and the One and Two Family Dwelling Code as the applicable regulations during a colloquy which took no more than a page of trial transcript and involved nothing more than citing the regulations. Accordingly, we see no point in remanding to the circuit court, as the Morlocks would have us do, to consider the "reasonable expenses incurred in making the proof." Rule 2–424(e).

Finally, the Morlocks contest the grant of remittitur in the amount of $2,912.07. We are at a loss to explain how the trial judge concluded that the jury had duplicated this figure. The question, however, is academic, since we have already ruled that under *Council of Co–Owners* the Morlocks were entitled to no more than $6,670.83 in damages— the amount they actually spent to correct the condition of the wall—rather than the $49,172.07 they were awarded by the jury. We therefore need not consider this issue. Accordingly, we vacate the judgment and remand the case to the circuit court for entry of an order consistent with this opinion.

JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES AND CROSS–APPELLANTS.