LUMBERMENS MUTUAL CASUALTY
COMPANY *v.* ELY, ET UX.

[No. 176, September Term, 1968.]

*Decided April 30, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN and SMITH, JJ.

*Albert D. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellant.

*William J. Rowan, III,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This is a battle between an insurance company and a home owner as to whether or not the insurance company should pay for damages to a home under a policy insuring against windstorm.

Appellees (Ely) own a home in Montgomery County. On August 26, 1965, there was a storm. The testimony of Ely as summarized by appellant (Lumbermens) in its brief is:

"The insured, Nathaniel Ely, testified that he was in his living room at about 4:00 or 5:00 p.m. on August 26, 1965. He was standing facing the rear of his

house. He observed rain driving horizontally toward the back of the house which was composed of large sections of single pane glass in six foot panels. The back wall of glass was 14 to 15 feet high in the center with exposed beams on the ceiling and came down from the center on either side to about nine feet at the ends of the wall. He then saw the exterior overhang lift and at the apex of the wall where it joined the roof, he saw a space of daylight between ½ and 1 inch appear. As soon as this 'gust was over' the roof settled back again. He further said water came in at the same time through this opening. He had no leakage prior to that time. The rear wall also seemed to buckle under the wind, but not in the middle, rather at the outer edges."

The trial judge directed a verdict for Ely. He was about to leave with the jury the assessment of damages when Lumbermens stipulated to an assessment of damages in the amount of $1925.00. We shall affirm the trial court.

The policy insured against:

"3. Windstorm or hail, excluding:

"(a) loss caused directly or indirectly by frost or cold weather or ice (other than hail), snowstorm or sleet, all whether driven by wind or not;

"(b) loss to the interior of the building(s), or the property covered therein caused by rain, snow, sand, or dust, all whether driven by wind or not, *unless* the building(s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the *direct force of wind* or hail and then this Company shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand, or dust entering the building(s) through *openings* in the roof or walls *made by direct action of wind* or hail." (emphasis added)

Lumbermens here contends (1) the trial court erred in di-

recting a verdict, (2) the trial court erred in ruling as a matter of law that the policy covered the accumulated effects of damage from wind as one loss, (3) the trial court erred in refusing evidence as to what constitutes sufficient velocity to do the structural damage present, (4) the policy did not cover structural alterations to prevent recurrence, (5) the trial court erred in permitting a total bill without breakdown as to repair and structural alterations, and (6) the trial court erred in refusing to grant leave to Lumbermens to reopen its case to offer evidence of the difference in these costs after it had rested its case.

We believe the questions presented may be summarized as (1) whether the trial court erred in directing a verdict, (2) whether the trial court erred in its rulings on expert testimony, (3) whether the trial court erred in the amount of the judgment entered, and (4) whether the trial court erred in refusing to permit reopening of the case by Lumbermens.

Ely was the only witness as to the occurrence of the damage. He testified as to the storm and the damage resulting therefrom, presented the evidence of his repairman and rested. His testimony as to storm damage was corroborated by the repairman who testified in response to a question asking him to describe what his inspection after the storm showed:

> "Along the roof line in this area, the roof had lifted. There was approximately a ¾ to 1" gap between the roof and these uprights structural members. There was also in these areas here (indicating) around the bedding, the putty that the plate glass was bedded into, it had broken loose; the edges of the glass were broken, were cracked. Not broken off, but cracked. These beams were approximately ¾ of an inch, as I say, below the roof line. This area here on this horizontal beam was out of place, maybe ¾ to an inch. There was no damage along this line here (indicating)."

Lumbermens presented a witness said to be an expert in the field of structural engineering and also with reference to aerodynamics. He testified that he checked climatological reports for the Washington area as recorded at Washington National

Airport for the day in question and the highest wind was 27 miles per hour, Washington National Airport being some miles removed from the Ely home in Bethesda, Maryland. He was then asked:

> "Now, in your opinion, Mr. Manuccia, could the wind of 27 miles per hour have had (sic) permitted the seams to become wide enough to leak?"

An objection was interposed. After much colloquy the trial judge said:

> "Well, let us get back to the pending question. It is the Court's view that as phrased, it is an objectionable question and the Court, from what it has learned about the policy of insurance, makes this ruling because of its belief that there is no exclusion under the policy for cumulative effect of wind. If the opening in question, through which the wind-driven rain ultimately came was caused by wind, and it is not incumbent upon the Plaintiffs as the Court understands the issues, to prove that the sole effect of wind, which caused the opening occurred on the particular day in question.
> "The objection will be sustained on that basis."

In *Smack v. Jackson,* 238 Md. 35, 207 A. 2d 511 (1965) Judge Horney said for this Court:

> "Under Maryland Rule 552 a, a party is not entitled to a directed verdict in his favor unless the facts and circumstances are such as to permit of only one inference with regard to the issue presented." (citing cases) *Id.* at 37.

5 Appleman, *Insurance Law and Practice,* § 3142 (1941) states:

> "Wind must be an efficient cause of loss in order to recover on a windstorm policy. And where the term *'direct'* is used, referring to the cause of loss, it means *proximate* or *immediate.* The insured may recover if the cause designated in a windstorm policy is the ef-

ficient cause of loss, though there may have been other contributing causes."( emphasis added)

For an annotation on the subject of windstorm damage see "Windstorm Insurance—Causes of Loss" in 93 A.L.R.2d 145 (1964). 29A Am. Jur., *Insurance,* § 1329 states:

> "A 'windstorm' need not have either the cyclonic or the whirling features which usually accompany tornadoes or cyclones, but it must assume the aspect of a storm—that is, an outburst of tumultuous force. In the absence of a definition or limitation in the policy, a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it, assuming the property to be in a reasonable state of repair."

It would seem that Lumbermens would have us define the term "windstorm" in terms of measured velocity. It is noteworthy that no definition of the term occurs in its policy, although it undoubtedly has been writing policies covering that peril for many, many years with an exposure over the years of many millions of dollars.

Lumbermens calls our attention to our recent decision in *American Cas. Co. v. Aetna Cas.,* 251 Md. 677, 248 A. 2d 487 (1968) wherein we said:

> "In *Aviation Ins. Co. v. Barclay,* 237 Md. 318, 206 A. 2d 119 (1965), Chief Judge Prescott speaking for the Court said:
>
>> 'A policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the par-

ties. We find no ambiguity in the pertinent terms of the policy here involved, so we shall give them their plain and ordinary meaning in determining whether the appellee was an additional insured.' *Id.* 323.

"See also cases collected in 12 M.L.E., Insurance § 75." *Id.* at 682.

Lumbermens also contends quite strongly that expert testimony should have been permitted as to what constitutes sufficient wind velocity to do the structural damage which here occurred. In *Empire State Ins. Co. v. Guerriero,* 193 Md. 506, 69 A. 2d 259 (1949), this Court said:

"It is of course well settled that the evidence of an expert witness is not admissible if the jury is able to decide or determine the question before it without special expert testimony. The witness must not usurp the province of the jury. (citing authorities) If a matter is within the knowledge and experience of persons of ordinary judgment and experience, opinion evidence, expert or otherwise, should not be admitted. If the facts can be intelligently understood by the jury and they can form a reasonable opinion from those facts for themselves, there is no reason to admit the opinion evidence of anyone. However, when the question involved is such that jurors of ordinary judgment and experience are incompetent to draw their own conclusion from the facts presented and intelligently decide the question before them without the aid of expert testimony, this opinion testimony is a notable exception to the well known rules of evidence. This exception should be applied with the greatest caution and discrimination. *Harris v. Consolidation Coal Co.,* 111 Md. 209, 219, 73 A. 805. It was said by this Court in the case of *Langenfelder v. Thompson,* 179 Md. 502, at page 505, 20 A. 2d 491 at page 493, 136 A.L.R. 960, 'In accordance with the weight of authority, it has been held by this Court that while expert testimony is not admissible on a question which the jurors themselves can decide from the facts, it is admissible when the forma-

tion of a rational judgment from the facts requires special training or skill. *Consolidated Gas, Electric Light & Power Co. v. State, to Use of Smith*, 109 Md. 186, 203, 72 A. 651, 658.' " *Id*. at 514-15.

Cf. *Nizer v. Phelps*, 252 Md. 185, 193-94, 249 A. 2d 112 (1969). In the view we take of this case we are not obliged to define the word "windstorm" in terms of wind any given number of miles per hour. No expert is required to tell a jury that a wind which raises a roof half an inch or more is an unusual wind. It would be adopting "a strained or unjustified construction of the policy" if we were to hold such a wind not to be a windstorm. There was only one reasonable inference which could be drawn from the evidence presented in this case and that is that wind lifted the roof of Ely's home, and the direct and proximate cause of the damage sustained was that wind. Wind of such force and violence is the unusual, rather than the usual. Accordingly, it was a windstorm within the meaning of the policy and the trial court properly directed a verdict for the plaintiff.

Lumbermens objects to the trial court's having entered a verdict which included in repair costs "structural alterations to prevent a recurrence," and the trial court's admission into evidence of a total bill without breakdown as to repair and structural alterations.

The following colloquy appears in the record:

> "Accordingly, the Court is obliged to grant the motion for a directed verdict as to the question of liability. The Court has considerable difficulty in going further and assessing the damages to which the plaintiff is entitled to upon the evidence before it.
>
> "The question has arisen during the course of trial as to whether or not damage to contents of the house, as to which some evidence has been received over objection, is covered by the policy.
>
> "May I hear from you on this question.
>
> "(Following further colloquy between Court and counsel, the Court conferred with counsel in chambers.)
>
> "(Recess.)

"The Court: As the Court has previously stated, it has directed a verdict on liability in favor of the plaintiff in this case and there remains only for our consideration the assessment of damages, and the Court has stated to counsel informally that in its view it could not properly take the case away from the jury in the exercise of that function. It would be obliged to submit the case to the jury on the question of damages in the present state of the evidence.

"I understand counsel might have something further to say on this subject.

"Mr. Brault: As I indicated to the Court in chambers, the issue to go to the jury on damages would be reasonableness. Our position as to those defenses and rulings made remains the same. We do not challenge the reasonableness of the charge for the work done and we feel that it would be an unnecessary burden on the Court to ask the jury to resolve that. We don't challenge reasonableness and are prepared to stipulate, so the Court can remove all issues and rule as a matter of law.

"The Court: I take it what you are saying, in effect, is that the sum of $1,725 for work done by Mr. Auxier and $200 damage to the drapes would be fair and reasonable in your view?

"Mr. Brault: Yes.

"The Court: Accordingly, there is no objection from counsel for the plaintiff?

"Mr. Rowan: No objection.

"The Court: The Court will assess the damage in the amount of $1,925 and let judgment be entered in accordance with the rules on that verdict."

Lumbermens appears to have consented to the verdict. Therefore, there is nothing preserved for our review.

We now address ourselves to whether or not there was error in refusing to allow appellant to reopen its case. The defendant presented its case. The plaintiff offered no rebuttal. It being then 4:45 P.M., court recessed. When court reconvened defendant Lumbermens moved to reopen its case for additional evidence.

It wanted to call an insurance agent to testify as to a loss deductible provision in the insurance policy. Counsel stated:

> "The purpose of clarifying the existence of a deductible, we feel, is to shed some light on the question that we have been arguing in the course of the trial, that is, whether or not the policy is designed and intended to insure against accumulating loss, or whether the policy is a single catastrophic coverage, the type for which would only cover wind loss on a given day or a given loss. We want to be certain there is no question about the existence of a deductible on a current basis in the record."

Lumbermens also wanted to have Ely's repairman break down the charges he had submitted. The trial judge pointed out that the insurance policy was in evidence and under the terms of the policy the deductible feature was not applicable if the loss was $500.00 or more.

The question of whether the case should have been reopened was within the sound discretion of the trial judge. *Telak v. Masszcsenski,* 248 Md. 476, 495, 237 A. 2d 434 (1968), *Willey v. Glass,* 242 Md. 156, 163, 218 A. 2d 212 (1966). We see no abuse of that discretion here.

In summary, considering all of the evidence which is in the record, there was no error in directing a verdict since the facts and circumstances permit only one inference with regard to the issue presented. The expert testimony offered by the appellant was properly excluded. The trial court did not err in granting judgment in the amount here contested, the appellant having stipulated below that the amount was correct. And, finally, the trial court did not abuse its discretion in refusing to allow the appellant to reopen the case.

*Judgment affirmed; appellant to pay the costs.*