YUNKER ET AL., D.B.A. SUTRI INVESTMENT CO., APPELLEES, *v.* REPUBLIC-FRANKLIN INSURANCE CO., APPELLANT.

(No. L-81-135—Decided
January 29, 1982.)

*Mr. Thomas J. Manahan* and *Mr. Edward J. McCormick, Jr.,* for appellees.
*Mr. Robert J. Potter,* for appellant.

POTTER, J. Republic-Franklin Insurance Company appeals a judgment in the sum of $100,000 rendered for plaintiffs for windstorm damage covered by defendant's policy and the court's subsequent denial of defendant's motion for a new trial and for judgment notwithstanding the verdict. We reverse.

On December 5, 1977, plaintiffs were owners of a building situated at 350 West Central Avenue, Toledo, Ohio, leased to the Great Atlantic & Pacific Tea Company. On the day in question, the building was insured with defendant, Republic-Franklin Insurance Company. In the early evening hours, a portion of the roof covering the southwest corner of the building collapsed into the interior of the store.

Plaintiffs filed a claim with defendant insurance company for the damages to the building, which claim was rejected due to the insurance company's interpretation of the following clause in the insurance policy:

"III. Perils Insured Against

"This policy insures under Section 1 against *all direct loss to the property* covered under this form caused by the following perils, except as otherwise specifically provided:

"A. Fire.

"B. Lightning.

"C. Windstorm and Hail:

"1. The Company shall not be liable as respects *these perils for loss caused directly or indirectly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not.*

"2. The Company shall not be liable as respects these perils for loss to the interior of the buildings or the property covered therein caused

"a. by rain, snow, sand or dust, whether driven by wind or not, unless the buildings covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the buildings or the property covered therein as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls by direct action of wind or hail; * * *." (Emphasis added.)

Plaintiffs allege that on the day in question a severe windstorm occurred in Toledo, causing the roof to collapse. The insurance company alleges that the loss was due to deterioration of the trusses supporting the roof and the weight of snow on the roof.

Evidence was admitted to the effect that on December 5, 1977, there was a snowfall in the Toledo area of approximately nine inches, that drifted snow accumulated on the southwest portion of the roof in the amount of six to eight feet, that during the course of the day gusts of wind reached forty-two miles per hour, that the building was approximately forty years old, that the trusses supporting the roof had deteriorated by reason of dry rot and, therefore, could not support the weight of the ice and snow. Witnesses' testimony as to proximate cause was in conflict. The cause was submitted to the

jury, which returned a verdict for plaintiffs. Defendant's propositions of law, which we consider to be assignments of error, are as follows:

"1. The Trial Court erred in failing to direct a verdict in favor of defendant and against the plaintiffs at the close of plaintiffs' case because of plaintiffs' failure to meet the burden of proof imposed on them by law.

"2. The Trial Court erred in failing to instruct the jury that in order for plaintiffs to recover, they had to show by a preponderance of the evidence, that wind was the sole cause of the loss.

"3. The Trial Court erred in instructing the jury that defendant had to meet any burden of proof.

"4. The Trial Court erred in instructing the jury that the defendant had the burden of proving that the loss was caused by snow and ice.

"5. The Trial Court erred in instructing the jury that plaintiffs and defendant had separate and independent burdens of proof.

"6. The Court erred in its definition of windstorm as set forth in its instruction to the jury.

"7. The Trial Court erred in its instructions in stating the nature of defendant's contentions throughout the trial.

"8. The Trial Court erred in not granting defendant's Motion for a New Trial and Judgment Notwithstanding the Verdict.

"9. The verdict of the jury rendered in this matter should be reversed on the grounds that it was clearly against the manifest weight of the evidence."

We find that defendant adequately protected the record as to these assignments. The issues in this case, reflected by the assignments of error, are: What amounts to a windstorm within the terms of the policy? What is the meaning of the words "direct loss" in the context of proximate cause where there are other causes which may contribute to the loss? What is the extent of the defendant's liability? Does the policy provide for an exclusion, or does it define the loss? Does the insurer have any burden? For comments and cases on these issues, see Grissom, The Scope of Windstorm Coverage, 1960 Ins. L. J. 615; 5 Appleman, Insurance Law & Practice, Sections 3141 *et seq.;* 11 Couch on Insurance 2d, Sections 42:333 *et seq.;* Annotation, 93 A.L.R. 2d 145, Causes of Loss Under Windstorm Insurance Coverage; Annotation, 65 A.L.R. 3d 1128, What Constitutes "Direct Loss" Under Windstorm Insurance Coverage.

We first consider the definition of "windstorm" and appellant's Assignments of Error Nos. 2 and 6. Our research indicates that it is an unusual ill wind which does not generate some new definition of "windstorm." The only consensus is that the cases are in hopeless conflict. See Grissom, *supra,* at 619; *Druggist Mut. Ins. Co.* v. *Baker* (Ky. Ct. App. 1952), 254 S.W. 2d 691[1]; 5 Appleman, *supra,* Section 3142; 11 Couch, *supra,* Section 42:335.

Defendant-appellant urged that the trial court instruct the jury that:

"The term 'windstorm' as used in the policies of insurance means something more than an ordinary gust of wind or current of air, no matter how prolonged,

---

[1] The court said the following at page 692:

"We are not impressed with any of the definitions or tests which have been applied in the cases mentioned. It seems to us that in the absence of a definition or a limitation in the policy a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property, assuming the property to be in a reasonable state of repair. Applying that test to the evidence in this case, we are of the opinion that the evidence, although slight, was sufficient to take the case to the jury on the question of whether or not appellees' loss resulted from windstorm."

although it is not necessary that the wind be of any specific duration or of any specified velocity. The term means a wind of extraordinary or unusual violence and tumultuous force which has assumed the aspects of a storm as that term usually is understood and used in ordinary speech."

See *Butler Products Co.* v. *Connecticut Fire Ins.* (N.D. Ill.), 1969 Fire and Cas. Cases 145. The defendant also maintains that the windstorm must be the "sole" and "exclusive" cause of the damage. Defendant urged this standard relative to proof under Assignment of Error No. 1, and in the trial court requested the following charge:

"In order for the plaintiffs to recover, they have the burden to show by a preponderance of the evidence that the damage to their property for which recovery is sought was caused solely and exclusively by the direct force of windstorm."

The trial court in the case *sub judice* defined "windstorm" as follows:

"In order for the Plaintiff[s] to recover, they must show by a preponderance of the evidence that the damage to the property was proximately caused by windstorm. Windstorm can be defined as a wind capable of damaging the insured property by its own unaided action. It is more than a[n] ordinary current of air, but not of any specific duration or velocity."

The trial court, later in its charge, defined "proximate" cause as follows:

"A proximate cause is an act or omission which, in a natural and continuous sequence produces damage or injury and without which the result would not have occurred. Proximate cause exists when the damage is the natural and probable result of a negligent act or omission.

"An act is a proximate cause of damage when the act stands to the damage in the relationship of cause and effect. Remote cause is not a proximate cause."

While the trial court's definition and charge, standing alone, would not be reversible error, when the issues of burden of proof and contributory causes are considered, we think the following charge and definition should be used in the retrial of this cause. It is as follows:

"The policy insured the plaintiffs against direct loss by windstorm, but does not provide insurance for a loss caused directly or indirectly by snow [or sleet,] whether driven by wind or not.

"The burden is upon the plaintiffs to prove by a preponderance of the evidence that the property was damaged by a windstorm, and while the policy contains no definition of windstorm, you are instructed that under the law, a windstorm is defined as a wind which is of sufficient violence to be capable of damaging the insured property by its own unaided action provided that the property was in a reasonable state of repair at the time of the windstorm.

"Therefore, if you find that a windstorm was the dominant, direct and efficient cause of the loss and damage to plaintiffs' [skating rink and the equipment located therein,] then your verdict will be for the plaintiffs."

See *Lynch* v. *Travelers Indemn. Co.* (C.A. 8, 1972), 452 F. 2d 1065, fn. 1, at page 1066.

The above charge will give proper recognition of the defendant's proposition that the rotted trusses and snow accumulation were the proximate cause. Further, the use of the words "dominant," "direct," and "efficient cause" relate to the issues relative to direct loss, contributing causes and burden of proof. *Grain Dealers Mut. Ins. Co.* v. *Belk* (Miss. 1972), 269 So. 2d 637; *Evana Plantation, Inc.* v. *Yorkshire Ins. Co. Ltd.* (1952), 214 Miss. 321, 58 So. 2d 797. The definition of "windstorm" contained in the above charge has been referred to as liberal, reasonable and the one most generally given. See Grissom, *supra;* see, also, 65 A.L.R. 3d 1128, *supra,* at Section 3.

In reference to the condition of the

structure in terms of defining "windstorm" it has been said that:

"Almost from its inception, the definition of a windstorm in terms of its damaging force has received one principal refinement—that the condition of the insured property must be taken into consideration. In *Pearson* v. *Aroostook County Patrons Mut. Fire Ins. Co., supra,* the court said:

" 'We do not hold that any wind that damages insured property is a windstorm. Such a rule leaves out of consideration a highly important factor—namely the condition of the property. A *windstorm,* in our view, under the policy is a wind of force and velocity sufficient to cause damage to the property *if in reasonable condition.'* 149 Me. at 320, 101 A. 2d at 186.

"*Accord, Druggist Mut. Ins. Co.* v. *Baker,* 254 S.W. 2d 691 (Ky. Ct. App. 1952); *see Fidelity-Phenix Fire Ins. Co.* v. *Board of Education,* 201 Okla. 250, 204 P. 2d 982 (1948). In our opinion, this line of cases provides a rule which is both reasonable and practicable. Its application here allows for recognition of the fact that a building under construction in not as structurally stable as when completed, and is, therefore, more vulnerable to damage from the force of the wind. While some courts have specifically rejected this consideration, *e.g., Stephens* v. *New Hampshire Ins. Co.,* 92 Idaho 537, 447 P. 2d 14 (1968), we are persuaded that due regard for the condition of the insured property is necessary in order to uphold the expectations of both parties to a contract of insurance. Accordingly, we hold that where the term 'windstorm' is undefined in a policy of insurance, it means a wind of sufficient force to damage insured property, if in a reasonable condition, either by its own unaided action, or by projecting some object against it." *St. Paul Fire & Marine Ins. Co.* v. *Central Park Mobile Homes* (1974), 22 Ariz. App. 557, 560, 529 P. 2d 711, 714.

The above definition places in proper perspective the issue of other contributing causes. In commenting on a like issue the United States Court of Appeals in *Shinrone, Inc.* v. *Ins. Co. of North America* (C.A. 8, 1978), 570 F. 2d 715, at 718-719, said the following:

"Where the wind and an excluded risk concur in causing loss, some courts deny recovery. *National Fire Insurance Co.* v. *Crutchfield,* 160 Ky. 802, 170 S.W. 187 (1914); *Lydick* v. *Insurance Co. of North America, supra; Coyle* v. *Palatine Insurance Co.,* 222 S.W. 973. (Tex. Com. App. 1920). Other courts have held that the insured may recover even though the excluded risks contributed to the loss, so long as their contribution was indirect and incidental. *Anderson* v. *Connecticut Fire Insurance Co.,* 231 Minn. 469, 43 N.W. 2d 807 (1950); *Trexler Lumber Co.* v. *Allemannia Fire Insurance Co. of Pittsburgh,* 289 Pa. 13, 136 A. 856 (1927). Yet a third analytic approach, adopted by a number of the courts that have addressed the question of recovery under insurance policies covering 'direct loss' by windstorms, is keyed to the issue of whether the windstorm was the efficient or proximate cause of loss, notwithstanding the contribution of other factors to the loss. *Kemp* v. *American Universal Insurance Co.,* 391 F. 2d 533 (5th Cir. 1968); *Travelers Indemnity Co.* v. *Wilkes County,* 102 Ga. App. 362, 116 S.E. 2d 314 (1960); *Lumbermens Mutual Casualty Co.* v. *Ely,* 253 Md. 254, 252 A. 2d 786 (1969).

"The trial court's instruction defining windstorm and direct loss policy provisions permitted recovery where the windstorm was 'the dominant or proximate cause' of the loss. This definition of the direct loss policy provision certainly was a permissible approach that falls within the parameters of the decisional law discussed above and appears to be an appropriate and reasonable view on the issue here presented."

We reject appellant's proposition and the proposed charge that plaintiffs had to

establish by a preponderance of the evidence that the damage was caused "solely" and "exclusively" by windstorm. This is not the general rule. See 65 A.L.R. 3d 1128, *supra,* and cases cited therein. Assignment of Error No. 2 is not well taken. Assignment of Error No. 6, to the limited extent set forth above, is well taken.

We next consider appellant's Assignments of Error Nos. 3, 4 and 5 relative to burden of proof. The trial court, in its charge, stated the following:

"The burden of proof is upon the Plaintiff and the Defendant, as I will explain to you later, to prove facts necessary for their case, their respective cases, by a preponderance of the evidence.

"* * *

"It is further necessary for the Plaintiff to recover that the Defendant failed—Plaintiff failed to prove by a—Defendant failed to prove by a preponderance of the evidence that the damage was proximately caused by snow or ice."

The trial court concluded that the following provision in the policy was an exclusion and, therefore, defendant had the burden of proof:

"III. PERILS INSURED AGAINST

"* * *

"C. Windstorm and Hail:

"1. The Company shall not be liable as respects these perils for loss caused directly or indirectly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not."

Appellant relies on *Continental Ins. Co.* v. *Louis Marx & Co.* (1980), 64 Ohio St. 2d 399 [18 O.O.3d 539]. The syllabus in that case is as follows:

"When an insurer denies liability coverage on the basis of a 'business risk' exclusion that exempts coverage for 'bodily injury or property damage, resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by

the named insured,' the burden is on the insurer to prove that the product failed to perform the function or serve the purpose intended by the insured."

We find the above rule of law is not applicable. Section III C, subsection 1, is not an exclusion but a definition of "peril" and "direct loss."

The words "direct loss" refer to the immediate physical damages. Subsection 1 is intended to exclude consequential damages. In *Williams* v. *Liberty Mut. Fire Ins. Co.* (1956), 334 Mass. 499, 503, 135 N.E. 2d 910, 912, that court, in interpreting a similar policy clause, stated the following:

"We think that there is no ambiguity in the term 'direct loss' as used in the policy. It refers to the immediate physical damage resulting from the effect of the wind, in this case the loss of the shutter. That it was intended to exclude consequential damage is shown by the express exclusion of losses due to frost, cold weather, ice, snowstorm, sleet, waves, tidal wave, and high water or overflow, all being conditions which naturally might be expected to follow in the wake of a windstorm."

See, also, Grissom, *supra;* 65 A.L.R. 3d 1128, *supra,* Section 8. The defendant had no burden except the burden of going forward if plaintiffs established a prima facie case. This, however, is not a case where the insured has to separate losses or to "individuate," as the only loss under the policy was the collapse of the roof. See *Styborski* v. *Hartford Fire Ins. Co.* (1951), 169 Pa. Super. 452, 82 A. 2d 543; *La Bris* v. *Western Nat. Ins. Co.* (1950), 133 W. Va. 731, 59 S.E. 2d 236. The issue was one of proximate cause. The burden of proof on this issue was on the plaintiffs. In resolving this issue the jury should, as the trial judge charged, consider all the evidence, regardless of who produced it.

For the reasons stated and to the extent thereof, we find appellant's Assignments of Error Nos. 3, 4 and 5 well taken. Appellant's Assignment of Error

No. 7, only to the extent above stated, is well taken.

Appellant's Assignments of Error Nos. 1, 8 and 9, as they deal with the issue of manifest weight, are not well taken. However, we have previously noted the trial court should not have placed a burden of proof on the defendant.

The judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded for further proceedings. Costs to abide final determination.

*Judgment reversed and*
*cause remanded.*

CONNORS, P.J., and BARBER, J., concur.