911 A.2d 888

**TERUMO MEDICAL CORP. et al.**

v.

**Ellen D. GREENWAY.**

**No. 2631, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 4, 2006.

618

Richard W. Scheiner (Sean E. Smith, on brief), Baltimore, for appellant.

Leo Ryan, Jr. (Arnold, Sevel & Gay, P.A., on brief), Baltimore, for appellee.

Panel ADKINS WOODWARD MOYLAN, CHARLES E., JR. (retired, specially assigned), JJ.

MOYLAN, J.

This appeal's fatal flaw is that the case the appellant would like to litigate here at the appellate level is not the case it put on at the trial level, "and thereby hangs the tale." [1] The issue the appellant would like us to analyze is the basis for an expert opinion. The issue we shall analyze is the proper time and place and modality for raising a challenge to such a basis. On the consideration of the latter question, the merits of the former are immaterial.

The appellee, Ellen D. Greenway, initially filed a claim with the Workers' Compensation Commission, alleging an accidental injury to her lower back that occurred while she was employed by the appellant, Terumo Medical Corporation. The Commission made an award to the appellee for permanent partial disability in the amount of 50% industrial loss of the body. The appellee, seeking a larger award, petitioned for judicial review by the Circuit Court for Cecil County.

Following a two-day trial on December 7–8, 2005, a Cecil County jury, presided over by Judge J. Owen Wise, found that the appellee was permanently and totally disabled. On this appeal, the appellant raises the two contentions

1. that Judge Wise erroneously denied its Motion for Judgment at the end of the entire case; and

2. that Judge Wise erroneously instructed the jury on the issue of permanent total disability.

---

1. *As You Like It,* Act II, Scene vii.

### An Opinion Introduced Without Objection

On the critical issue of the permanency of her disability, the appellee relied primarily on the expert opinion of Dr. Raymond Drapkin. Dr. Drapkin testified via a video-taped deposition. Dr. Drapkin was fully qualified as an expert competent to render a medical opinion as to the appellee's degree of disability. The appellant raises no challenge in that regard. Dr. Drapkin testified in detail about a number of things that he looked at and reviewed in the course of his evaluation of the appellee, but, in view of our disposition of the appellant's first contention, it is unnecessary to recount a catalog of factors that are in the last analysis immaterial. As he concluded his direct testimony, Dr. Drapkin offered the following bottom-line appraisal of the appellee's disability.

Q And based on those same things, your exam, your review of the records, and diagnostic studies, *did you reach an opinion within a reasonable degree of medical probability as to Ms. Greenway's ability to return to work?*

A *I felt that she was unable to ever return to work again.*

Q Okay. And the opinions you've expressed today are all within a reasonable degree of medical probability?

A Yes. They are all within a reasonable degree of medical probability. *It was my opinion, based upon this type of surgery and her condition, that also as stated she could not return to her work. And when I review all her medical records, that was also the opinion of her treating physician who did the surgery, that she could not return to work.*

(Emphasis supplied).

That opinion was received in evidence without objection. At no time prior to the playing of the video tape before the jury did the appellant, by motion *in limine* or otherwise, seek to preclude the admission of Dr. Drapkin's opinion. At no time during or immediately after the playing of the video tape did the appellant object to the admissibility of Dr. Drapkin's expert opinion. Maryland Rule 5–103(a) is very clear.

(a) **Effect of erroneous ruling.** *Error may not be predicated upon a ruling that admits* or excludes *evidence unless* the party is prejudiced by the ruling, and

(1) Objection. *In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record,* stating the specific ground of objection, if the specific ground was requested by the court or required by rule.

(Emphasis supplied). The admission of Dr. Drapkin's expert opinion is no longer subject to challenge.

In *Hall v. State,* 119 Md.App. 377, 389–90, 705 A.2d 50 (1998), Judge Bloom explained why the requirement of a contemporary objection to admissibility is so important.

It is a well recognized principle that, as a general matter, *the admissibility of evidence admitted without objection cannot be reviewed on appeal. An objection is required so that the proponent of the evidence may rephrase the question or proffer so as to remove any objectionable defects, if possible. It also allows the trial judge to resolve as many issues as possible, so as to avoid unnecessary appeals.* McLain, *Maryland Evidence,* § 103.3. Md. Rule 5–103 specifically provides that "[e]rror can not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rules; ...."

(Emphasis supplied).

■ The appellant had no less than three opportunities to object to the admission of Dr. Drapkin's opinion. It availed itself of none of them. The appellant could have objected to Dr. Drapkin's rendering of his opinion in the course of the deposition itself. It did not do so. Knowing well before trial the full content of the deposition, the appellant could, pursuant to Rule 2–416(g), have moved to have all or part of Dr. Drapkin's testimony excluded. It did not do so. During the playing of the video tape before the jury, the appellant could

have objected to the admission of the expert opinion. It did not do so. After that point, the time for challenging the admissibility of the evidence had passed.

## Legal Sufficiency Versus Admissibility

 Any flaws or imperfections in the basis for the opinion could still, of course, have been argued to the jury. The possible impact of such argument, however, would have been only upon the weight of the evidence and not upon its admissibility. A motion for judgment pursuant to Rule 2–519, by contrast to a jury argument, is concerned only with whether the plaintiff has met the burden of *prima facie* production, as a matter of law, and not with the weight of the evidence, as a matter of fact. A motion for judgment under rule 2–519 may not be used to challenge indirectly an admissibility ruling that may no longer be challenged directly.

## Maryland Rule 5–702 Regulates Admissibility, Not Legal Sufficiency

At the most fundamental level, the appellant is confusing the issues of 1) admissibility and 2) legal sufficiency. In arguing that it was erroneously denied a judgment at the end of the entire case, the appellant relies almost exclusively, but inappropriately, on Rule 5–702. Once the meridian of admissibility has been successfully passed, rightly or wrongly, the evidence thus received will figure into the computation of legal sufficiency. The question of whether the evidence was rightly or wrongly received is an entirely different issue, focusing on an earlier trial event and not on the motion for judgment. The appellant blurs this line of demarcation.

Rule 5–702 is concerned with the admissibility of expert testimony, including the adequacy of the basis for an expert's opinion. It is beyond dispute that the procedural step in a trial to which Rule 5–702 is addressed is the reception into evidence of the expert testimony and expert opinion. The opening words of the rule flatly state:

*Expert testimony may be admitted,* in the form of an opinion or otherwise, if. . . .

(Emphasis supplied).

Lynn McLain, *Maryland Evidence* (2d ed.2001), § 702.2, clearly states, with specific reference to Rule 5–702(3) concerning the basis for an expert's opinion, that if the proffered opinion lacks an adequate basis, it is inadmissible *per se.*

Md. Rule 5–702(3) codifies the Maryland case law rule that *expert testimony is inadmissible if it lacks an adequate basis.* Testimony amounting only to speculation or conjecture, or testimony based on improper or insufficient data, or *testimony lacking factual support in the admitted evidence, is inadmissible.*

(Emphasis supplied). If a proffered expert opinion, properly challenged, fails the Rule 5–702 test in any respect, it does not come into evidence at all. It does not come halfway in, with less than full efficacy. Under Rule 5–702, the evidence is either in or out.

Our point is that whatever battle is to be fought out over the adequacy of the factual basis for an expert opinion is to be fought out when the evidence is offered and when the judge rules on its admissibility. The opponent of the expert evidence does not get a second opportunity to challenge the factual basis for the expert opinion under the guise of litigating something else, such as a motion for judgment under Rule 2–519. That, however, is precisely what the appellant is attempting to do. The ultimate substantive "sufficiency" of the plaintiff's case, which is the concern of Rule 2–519, and the admissibility-oriented "sufficiency" of the factual basis for an expert opinion, which is the concern of Rule 5–702, are very different questions and should not be confused. All "sufficiencies" are not the same, and a proper consideration of substantive "sufficiency," under Rule 2–519, does not embrace a reconsideration of evidentiary "sufficiency" within the contemplation of Rule 5–702.

## Why This Is the Law

To the best of our researching capabilities, we have not been able to discover a reported decision dealing with precisely this issue. Our assurance in holding as we do, however, is supported by both inherent logic and principles of legal economy. In terms of legal economy, for every type of ruling a trial judge must make, there is typically a precise juncture at which such ruling should be made and from which an appellate claim of error may be taken. As a practical matter, trial procedure and appellate procedure do not indulge the raising of precisely the same issue in two different ways in two different places. That is not an efficient way to operate a legal system.

Rulings on the admissibility of evidence are a highly pertinent case in point. Maryland Rule 5–103(a)(1) controls the challenging of an evidentiary ruling.

(a) **Effect of erroneous ruling.** *Error may not be predicated upon a ruling that admits or excludes evidence unless* the party is prejudiced by the ruling, and

(1) Objection. In case the ruling is one admitting evidence, *a timely objection* or motion to strike *appears of record,* stating the specific ground of objection, if the specific ground was requested by the court or required by rule.

(Emphasis supplied).

Rule 5–103(a) would be emasculated if an evidentiary ruling could still be challenged indirectly, on a motion for judgment for instance, even though it had not been challenged and could no longer be challenged directly because of Rule 5–103(a). It would be, in classical terms, a violation of Occam's Razor to multiply unnecessarily the procedural modalities by which the admission of an item of evidence might be challenged. The law seeks to accomplish a goal in one particular way, and that should be the simplest way possible.[2]

Rule 2–517, indeed, reinforces the direct approach mandated by Rule 5–103(a). Rule 2–517 provides, in pertinent part:

---

2. The simplest solution should always be the preferred solution. If you hear hoofbeats, think horses, not zebras.

(a) **Objections to evidence.** *An objection to the admission of evidence shall be made at the time the evidence is offered* or as soon thereafter as the grounds for objection become apparent. *Otherwise, the objection is waived.* The court shall rule upon the objection promptly.

(Emphasis supplied). See also *Burke v. Associates Loan Co.*, 210 Md. 211, 212, 123 A.2d 206 (1956); *Martin v. State*, 203 Md. 66, 72, 98 A.2d 8 (1953); *Cole v. Sullivan*, 110 Md.App. 79, 87–88, 676 A.2d 85 (1996) ("Rule 2–517 requires an objection to be made at 'the time evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived.' ").

In *Perry v. State*, 357 Md. 37, 77, 741 A.2d 1162 (1999), Judge Wilner explained the purpose for insisting upon a contemporaneous objection.

The requirement of a contemporaneous objection is a necessary and salutary one, designed to assure both fairness and efficiency in the conduct of trials. *A party cannot be permitted to sit back and allow the opposing party to establish its case,* or any part of its case, *through unchallenged evidence and then, when it may be too late for the opposing party to recover, to seek to strike the evidence.*

(Emphasis supplied).

■ Rule 2–519, in contrast to Rules 2–517, 5–103 and 5–702, focuses on an issue quite distinct from that of evidentiary admissibility. In analyzing whether a proponent has met the burden of production, the court lists the constituent elements of the proposition to be proved—the crime, the tort, the contract, etc.—and then determines whether the evidence in the case, if given maximum credibility and maximum weight, could permit the fact finder fairly to find each of those constituent elements.

If a Rule 2–519 motion were intended to serve the secondary function of permitting a party to relitigate admissibility, after having lost the initial opportunity to do so, as the appellant necessarily argues it is intended to serve, a strange anomaly would result. A Rule 2–519 motion, of course, may

be made at the close of all the evidence only "in a jury trial." [3] (Emphasis supplied). Why should a party, at the end of the entire case, be given a second opportunity to challenge evidence in a jury trial, but be denied the same opportunity in a non-jury trial? There would be no rhyme or reason for such a discriminatory distinction, if permitting a second round of objections were, indeed, the purpose (even a secondary purpose) of a Rule 2–519 motion. It is not.

 When the burden of production is being analyzed pursuant to Rule 2–519, the evidence introduced by the proponent is given the benefit of every favorable presumption. The evidence at that juncture is not to be questioned or weighed skeptically. As Judge Orth pointed out for the Court of Appeals in *Impala Platinum v. Impala Sales,* 283 Md. 296, 328, 389 A.2d 887 (1978):

> [I]n considering a motion for a directed verdict *the trial court assumes the truth of all credible evidence on the issue and of all inferences fairly deducible therefrom, and considers them in the light most favorable to the party against whom the motion is made. Dix v. Spampinato,* 278 Md. 34, 37, 358 A.2d 237 (1976); *D.C. Transit System v. Brooks,* 264 Md. 578, 580, 287 A.2d 251 (1972); *Stoskin v. Prensky,* 256 Md. 707, 709, 262 A.2d 48 (1970); *P. Flanigan & Sons v. Childs,* 251 Md. 646, 653, 248 A.2d 473 (1968); *Hogan v. Q.T. Corporation,* 230 Md. 69, 74, 185 A.2d 491 (1962); *Campbell, Etc. v. Patton,* 227 Md. 125, 134, 175 A.2d 761 (1961). *If there is any legally relevant and competent evidence, however, slight, from which a rational mind could infer a fact in issue, then a trial court would be invading the province of the jury by declaring a directed verdict.* In such circumstances, the case should be submitted to the jury and a motion for a directed verdict denied. *Snoots v.*

---

**3.** At the end of the plaintiff's case, by contrast, there is no such distinction between a non-jury trial and a jury trial. At that earlier juncture, a Rule 2–519 motion may be made regardless of the trial modality. At the end of the entire case, on the other hand, it may be made *only* in a jury trial.

*Demorest,* 254 Md. 572, 575, 255 A.2d 12 (1969); *Lumbermens Mut. Cas. Co. v. Ely,* 253 Md. 254, 263, 252 A.2d 786 (1969); *Jacobson v. Julian,* 246 Md. 549, 555–556, 229 A.2d 108 (1967); *Plitt v. Greenberg,* 242 Md. 359, 367–368, 219 A.2d 237 (1966); *Smack v. Jackson,* 238 Md. 35, 37, 207 A.2d 511 (1965); *Dunnill v. Bloomberg,* 228 Md. 230, 233, 179 A.2d 371 (1962).

(Emphasis supplied).

■ Judge Orth also went on to describe the similar tilt in favor of the evidence when the appellate court is reviewing a decision made on a motion for judgment.

In considering the propriety of the trial court's ruling on a motion for directed verdict, *this Court,* as well as the lower court, *is obliged to assume the truth of all evidence tending to sustain the party against whom the motion is directed, as well as all inferences of fact reasonably and fairly deducible therefrom. Fleming v. Prince George's County,* 277 Md. 655, 658, 358 A.2d 892 (1976); *Taylor v. Armiger,* 277 Md. 638, 640, 358 A.2d 883 (1976); *Summit Loans, Inc. v. Pecola,* 265 Md. 43, 46, 288 A.2d 114 (1972); *Wood v. Johnson,* 242 Md. 446, 452, 219 A.2d 231 (1966); *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A.2d 53 (1961).

283 Md. at 329, 389 A.2d 887. *See also Paul V. Niemeyer and Linda M. Schuett, Maryland Rules Commentary* (2d ed.1992), 389–90.

As we apply that principle of looking at the evidence in the light most favorable to the proponent (the non-moving party), how does that optimal perception operate with respect to an expert opinion that has once been received in evidence at the behest of the proponent? An expert opinion, if once received in evidence, is competent to support the conclusion for which it was admitted. The three prerequisites for the admissibility of an expert opinion spelled out in Rule 5–702 *ipso facto* establish, if they have been satisfied or unchallenged, the threshold competence of the expert opinion. If the proffered opinion is lacking in any of Rule 5–702's three regards, including that of an adequate factual basis for the opinion, it is *per se* inadmissi-

ble in the first instance. See Lynn McLain, *Maryland Evidence* (2d ed.2001), §§ 702 *et seq.*

For the appellant to argue that "Dr. Drapkin did not have an adequate factual basis to render an opinion on permanent total disability" is, *ipso facto*, to argue that Dr. Drapkin's testimony was inadmissible pursuant to Rule 5–702(3), which provides:

> *Expert testimony may be admitted* in the form of an opinion ... *if the court determines that ... a sufficient factual basis exists* to support the expert testimony.

(Emphasis supplied).

That initial hurdle of admissibility had been once cleared, but was being redundantly raised again by the appellant. If an expert opinion is admissible in the first instance, its competence is thus established. If it is not competent, it is not admissible. The issue of competence is wrapped into the issue of admissibility, and the one cannot be divorced from the other.

It is a contradiction in terms, therefore, to say that an expert opinion is, at one and the same time, both 1) properly admitted in evidence and 2) legally incompetent, as a matter of law. If an expert opinion has been ruled to be admissible or is beyond challenging in that regard, it necessarily enjoys, for Rule 2–519 purposes, 1) the presumption of having satisfied Rule 5–702's three requirements and 2) the presumption, thereby, of being legally competent to support the conclusion of the expert for which it was received. That is, by definition, "the light most favorable to the proponent," in which it is to be viewed.

Whether the expert opinion, even when given maximum weight and maximum credibility, is enough for the plaintiff to survive a Rule 2–519 motion and to take a case to the jury is an entirely different matter. It may or my not be, depending on what the constituent elements are of the proposition that is to be proved. That distinct question, however, is not the question the appellant is raising in this case.

■ Our response to the appellant's contention is simply that, once an expert opinion has been received in evidence, one may not seek to avoid its impact by making an untimely Rule 5–702 admissibility challenge under the guise of a Rule 2–519 motion for judgment based on the legal insufficiency of the plaintiff's case. The right to challenge the sufficiency or adequacy of the plaintiff's case in macrocosm does not embrace the entitlement to rechallenge the sufficiency or adequacy of the basis for the expert's opinion in microcosm. There are different kinds of sufficiency, and there are different times and places and ways for measuring sufficiency for different purposes. It is this distinction that the appellant sought to blur. It is this distinction that we are laboring to make clear.

Were the appellant's position to prevail, moreover, the repercussions could be chaotic. An opponent could fail to challenge an expert's qualifications when the expert initially took the stand but could later, in a motion for judgment at the close of the entire case, cast the expert's credentials into question for the first time. Were the expert not properly qualified, after all, the expert's opinion could not establish the conclusion for which it was offered. In terms of an expert's methodology, an opponent could, for the first time at the close of the entire case, raise a *Frye–Reed* challenge to a methodology's acceptance in the scientific community. A *Frye–Reed* challenge could trigger extensive legal argument, legal memoranda, and possibly additional testimony. Were the methodology not acceptable, after all, the expert opinion could not establish the conclusion based upon that methodology. Our procedure simply does not contemplate using the relatively routine motion for judgment at the close of the entire case in a jury trial as a forum for virtually retrying the entire case. The result could be procedural pandemonium.

By analogy to the criminal law, a motion for a judgment of acquittal at the close of the entire case does not indulge the redundant relitigation of even fundamental constitutional rights. Even in a case in which the State's evidence might not have been legally sufficient to go to the jury without the defendant's confession or without the physical evidence or

without the pretrial identification, the unchallenged confession may not be deemed legally insufficient just because its voluntariness was not expressly shown; the unchallenged physical evidence may not be deemed legally insufficient just because its warrantless seizure was not expressly justified; and the unchallenged identification may not be deemed legally insufficient just because the impermissible suggestiveness of the identification procedure was not expressly negated. A motion for judgment is not a grab bag for everything that could have been and should have been decided at some other time, but was not.

Even constitutional double jeopardy law serves to emphasize the analytic separation between the issue of legal sufficiency and the issue of admissibility. In *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the Supreme Court held that a conviction had to be reversed because evidence had been erroneously admitted. It also concluded that, without the erroneously admitted evidence, the State's evidence would not have been legally sufficient to take the case to the jury. It nonetheless held that a retrial was to be permitted, because the evidence actually in the case, notwithstanding its erroneous admission, was legally sufficient to take the case to the jury. A legal sufficiency determination is a quantitative measuring of what is actually in the case and not a qualitative analysis of what should be in the case. For legal sufficiency purposes, if it's in, it's in.

At the most fundamental level, the appellant's argument, an admittedly perplexing conundrum at first blush, fails to make a basic distinction. It is a distinction between 1) substantive evidence that is offered to prove a matter in issue and 2) ancillary evidence that may be necessary to qualify the substantive evidence.

An analogy between hearsay testimony and expert testimony may be helpful. The thrust of the hearsay testimony, "The victim told me that it was the defendant who shot him," goes directly to prove a constituent element of the crime. As such, it is a key part of the legal sufficiency equation that is

analyzed on a motion for judgment. By contrast, the ancillary qualifiers of the evidence for its admission—such as, "It was the declarant's dying declaration;" "It was the declarant's excited utterance;" or "It was a business record"—do not go to prove an element of the crime and do not, therefore, enter into the legal sufficiency calculation. They may be indispensable prerequisites when admissibility is initially challenged, but the ancillary qualification process does not have to be replicated when the substantive thrust of the evidence is being measured at the end of the case.

Dr. Drapkin's substantive conclusion, "I felt that she was unable to ever return to work again," had a direct bearing on a constituent element of the claim—the permanency of the total disability. The qualifiers for the admissibility of his opinion, however, did not bear on an element of the claim. When we measure legal sufficiency, we look at the evidence that has been admitted. We do not reevaluate its competence. Dr. Drapkin's qualifications, Dr. Drapkin's methodology, and the factual basis of Dr. Drapkin's opinion do not themselves have any bearing on the element of permanency and are, therefore, not a part of the legal sufficiency equation.

The qualifying circumstances which go into making evidence competent may be critically important at an earlier stage of the trial when admissibility is in issue. They may even be relevant later in a trial when evidence is being weighed. They have nothing to do with the measuring of legal sufficiency, however, where maximum weight is assumed. The expert opinion as to the permanency of the disability was necessary to prove that constituent element of the appellee's claim. The qualifying predicates for the expert opinion, however, were not a necessary part of proving that substantive element of the claim. They were only ancillary factors. The hurdle of evidentiary qualification had already been surmounted and did not need to be addressed again.

A Rule 5–702–based challenge to the basis for Dr. Drapkin's expert opinion was no longer on the table when the appellant made its Rule 2–519 motion at the close of the case. There is

a season for making such an objection, and for the appellant in this case that season had passed.

### Let the Sphinx Retain Her Secrets

In an effort to fend off the foreclosing effect of not having objected to the admission of Dr. Drapkin's expert opinion as to permanent disability when it was offered, the appellant relies exclusively on the opinion of this Court in *Giant Food, Inc. v. Booker*, 152 Md.App. 166, 831 A.2d 481 (2003). The appellant cites *Booker* for the proposition that a challenge to the basis for an expert opinion, pursuant to Rule 5–702, may be made in the course of moving for a judgment, pursuant to Rule 2–519, notwithstanding the fact that no objection was earlier made when the expert opinion was initially offered and admitted into evidence. *Booker*, however, stands for no such proposition. It never expressly considered such an issue. It certainly engaged in no analysis of such an issue, nor did it make even passing reference to such an issue.

If the appellant is suggesting that this Court must nonetheless have decided such an issue *sub silentio*, it disingenuously ignores the rudimentary axiom of sound legal method that a so-called *sub silentio* "holding" is no holding at all. It is pure speculation with no precedential significance. A holding, to be worthy of such name and status, should be something expressly considered, thoroughly analyzed and explained, and unequivocally stated. It is not somebody's guess as to what a court "must have considered." It is foolhardy to attribute grand pronouncements to silence. *Stare decisis* is content to let the Sphinx retain her secrets.

To be sure, it was in the context of reviewing a circuit court's denial of a motion for a judgment that we held that there was no factually sufficient basis for the expert opinion in that case. In the *Booker* opinion, however, there was no mention of whether there had or had not been any antecedent objection when the expert opinion was initially introduced into evidence. The issue now before us, for which the appellant is citing *Booker* as precedent, never arose and was never expressly considered.

Indeed, if anything, the circumstantial evidence strongly suggests that in *Booker* there had, indeed, been an objection to the basis for the expert opinion at the time it was initially offered in evidence. Rule 5–702 points out that an expert opinion, to be admissible, must satisfy three criteria.

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, *the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.*

(Emphasis supplied).

There is no mention there of any hierarchial distinction among those three criteria. There is every reason to believe the criteria would be handled in precisely the same way. The *Booker* opinion itself quotes the rule and the three criteria before making the distinction that we find acidly corrosive of the assumption on which the appellant necessarily builds its proposition.

The rule itself delineates *three factors a court must evaluate for the admission of expert testimony:* (1) an expert must be qualified (Rule 5–702(1)); (2) the expert testimony must be appropriate for the particular subject (Rule 5–702(2)); and (3) a sufficient factual basis must exist to support that testimony (Rule 5–702(3)).

152 Md.App. at 182, 831 A.2d 481 (emphasis supplied).

Immediately after that discussion, this Court expressly held that, at the motion for judgment stage under Rule 2–519, no challenge would be permitted to the sufficiency of the evidence to go to the jury on the ground that the proponent of the expert opinion had failed to establish the qualification of the witness as required by Rule 5–702(1). That foreclosure was for the express reason that the opponent had failed to make a

timely objection on that ground when the expert opinion was initially offered and received in evidence. Judge Sharer squarely held:

> *Because appellants made no objection to the qualifications of Dr. Redjaee, and concede his expertise, we need focus on only the second and third factors.*

152 Md.App. at 182, 831 A.2d 481 (emphasis supplied). As a footnote then explained, our conclusion that the opponent had failed to make a timely objection was based not on any affirmative concession but only on the basis of an absence of objection.

> At trial (via the prior videotaped deposition) Booker tendered Dr. Redjaee as an expert as "a medical doctor, but also with a specialty in pulmonary medicine." *After a short voir dire, appellants did not object to Redjaee's qualifications as an expert* in the fields of general medicine, with a specialty in pulmonary medicine.

152 Md.App. at 182 n. 10, 831 A.2d 481 (emphasis supplied).

The only plausible inference to be drawn from the distinction between Rule 5–702(1), which we held could not be argued on the motion for judgment, and Rule 5–702(2) and (3), which we held could be argued, is that there had been a timely earlier objection on those two grounds, even if the *Booker* opinion itself made no express reference to those objections. If *Booker*, therefore, stands for anything *sub silentio*, it would appear to be the exact opposite of the ostensible rule for which the appellant cites it. We are content, however, to let any *sub silentio* conclusions remain silent.

The *Booker* opinion relied heavily on the earlier opinion of this Court in *Wood v. Toyota Motor Co.*, 134 Md.App. 512, 760 A.2d 315 (2000), *cert. denied*, 362 Md. 189, 763 A.2d 735 (2000). Chief Judge Murphy's opinion in that case provides a thorough substantive analysis of all three of Rule 5–702's prerequisites for the admissibility of an expert opinion. The opinion, on the other hand, provides no support at all for the procedural proposition the appellant is urging upon us in this case. Indeed, it might even be deemed to stand inferentially (*sub*

*silentio* ) for the exact opposite of what the appellant proposes.

In *Wood v. Toyota* there was a timely objection (by way of a pretrial motion *in limine* ) to the admission into evidence of the expert opinion. The trial judge refused to admit the opinion into evidence, ruling that the proponent had failed to satisfy any of Rule 5–702's criteria. This Court affirmed the trial judge's evidentiary ruling. The opinion had nothing to do with the legal sufficiency of an expert opinion to send an issue to the jury. It dealt only with admissibility *per se* and not with legal sufficiency.

### The Permissibility of a Supplemental Inquiry Does Not Establish Such an Inquiry As a *Sine Qua Non*

■ The appellant, at the very least, is creative. It takes a special set of circumstances that were before this Court in the single case of *Bullis School v. Justus,* 37 Md.App. 423, 377 A.2d 876 (1977), and from it confects an essentially universal new requirement for Workers' Compensation cases where the issue is one of permanent total disability. Such a finding of permanent total disability has always been subject to a medical inquiry. The thrust of the appellant's argument is that such a finding should now almost always be subject to a two-pronged inquiry, one medical and the other vocational. It is essentially the appellant's position that a claimant's case that fails to engage in a distinct vocational analysis cannot, as a matter of law, be deemed to be legally sufficient to justify submitting the issue of permanent total disability to a jury. The appellant's subcontention argues for the creation of a new and independent burden of production.

*The Claimant failed to produce vocational evidence in her case-in-chief sufficient to sustain the burden of production regarding the issue of permanent total disability.*

The *Bullis School* case stands for no such proposition. The accidental injury in *Bullis School* was not one that, at first blush, would ordinarily qualify to support a finding of total disability. The injury was to a knee. Our opinion described the knee injury in detail.

The accidental injury, in July 1973, occurred when his right knee was cut by the blade of a rotary lawn mower at the school. The knee was severely damaged, necessitating four operations, and resulting in his having to wear a leg brace most of the time. His knee pains him "continually" and frequently "gives way" on him even while wearing the brace. He is unable to extend his leg and walks with a limp. There is medical evidence that the pain and loss of mobility are permanent and will increase as he gets older. As a result of the accident he has developed osteomyelitis in the knee, a condition described as a "permanent" "infection and drainage from the bone" caused by bacteria having "gotten in the bone itself." There is further medical evidence that he cannot stand for periods beyond "an hour, an hour and a half at a time." After that period of time, "[h]e would have to sit down or stop doing what he is doing ... for as much as two, three hours, sometimes longer if he began to get swelling in the area before he could go about doing what he would have to do."

37 Md.App. at 427, 377 A.2d 876. It was nonetheless, when all was said and done, an injury to the right knee.

In order to bolster what might otherwise have seemed to be an equivocal or borderline case of total disability, the claimant called to the stand a vocational consultant. That vocational expert testified that because of the injury to the knee, along with other factors such as "limited intellectual ability" and "illiteracy and extremely poor manipulative ability," there did not exist a "stable market" for the services the claimant was capable of performing after the injury.

The appellant/employer in *Bullis School* contended that the testimony of a "nontreating vocational rehabilitative expert" was not admissible. The employer argued that nonmedical testimony on the issue of permanent total disability was inadmissible *per se.* Our decision held that it was not inadmissible, notwithstanding the fact that it might not, alone, be sufficient to create a jury issue.

In *Jewel Tea Co. v. Blamble, supra,* the Court of Appeals stated:

> "It has been held that reliance on lay testimony *alone* is not justified when the medical question involved is a complicated one, involving fact finding which properly falls within the province of medical experts.

From this statement appellants conclude that as this case involves complicated medical questions, nonmedical testimony is *inadmissible.* Such a conclusion is supported neither by the holding in *Jewel Tea* nor any language contained therein.

> . . . .

> ... [T]he holding in *Jewel Tea* went to the sufficiency of the evidence to support a requested instruction and not to the admissibility of any of that evidence.

37 Md.App. at 433, 377 A.2d 876 (emphasis in original).

We distinguished admissibility from legal sufficiency.

> Even the language in *Jewel Tea* relied upon by appellants does not support their argument. While the Court in *Jewel Tea* stated "that reliance on lay testimony *alone* is not justified when the medical question involved is a complicated one," *that does not mean that nonmedical testimony is thereby rendered inadmissible.* ... [W]hen the medical question involved is a complicated one, *lay testimony alone, although properly admissible, is not sufficient* to overcome uncontradicted medical testimony to the contrary.

*Id.* at 434, 377 A.2d 876 (emphasis supplied).

The legal principle that the appellant would distill from our opinion in *Bullis School* is a sweeping one.

> *There are two aspects to the permanent total disability analysis; a medical aspect, and a vocational aspect.* While not conceding the sufficiency of the opinion, Dr. Drapkin did provide a medical opinion regarding the Claimant's ability to return to the work force. *Bullis School,* however, *specified*

*that more is needed for a jury to consider the issue of permanent total disability.*

(Emphasis supplied).

In *Bullis School,* of course, we said no such thing. We held that testimony from a vocational expert was admissible. That was it. We did not have before us and we did not discuss any minimal requirements for taking a case of permanent total disability to the jury. We did not elevate vocational analysis to a *sine qua non* for a finding of permanent total disability.

One must be careful how one distills general principles out of a decision in a particular case. A holding that a particular line of inquiry is permissible by no means suggests that such a line of inquiry is indispensable. All that is permitted is not required, and that restraint on exuberant expansionism applies to the testimony of vocational experts.

## Submitting An Issue to the Jury Versus Instructing the Jury

The appellant's second contention seems to conflate complaints about two very different phenomena into an amorphous blend of a complaint. The contention is:

The Circuit Court erred as a matter of law in submitting the issue of permanent total disability to the jury pursuant to Md. Rule 2–520.

The language itself speaks of submitting an issue to the jury. Reference is made, however, to Rule 2–520, which deals with "Instructions to the jury." The appellant's argument in both its brief and its reply brief wanders back and forth, from sentence to sentence, between these two very different procedural events.

The appellant does not seem to be raising a contention with respect to the substantive content of the jury instruction given by Judge Wise on the subject of permanent total disability. The complaint, rather, seems to be that the submission of such an issue to the jury is a necessary incident of instructing the jury on such an issue and that the proper mechanism for challenging the submission of an issue is to challenge an

instruction on the issue. The only objection that the appellant lodged about the proposed instruction came within a minute or less after its Rule 2–519 argument for a judgment in its favor on that same issue had been denied. The sum total of objection to the jury instruction was:

Just for the record we'd object to the permanent total instruction *given our motion at the close of the evidence.*

(Emphasis supplied).

After Judge Wise later gave his instructions to the jury, he inquired of counsel:

*Counsel, do you have any exceptions to the instructions as given or requests for additional ones?*

MR. RYAN: None from the plaintiff.

*MR. SMITH: No, your Honor.*

THE COURT: *Do you renew the ones you made at the bench yesterday?*

*MR. SMITH: Just renew them for the record.*

(Emphasis supplied).

The only clue we have to the meaning of this contention is the appellant's explanatory phrase "given our motion at the close of the evidence." That motion for judgment "at the close of the evidence" was that the issue of permanency should not be submitted to the jury. An objection to an instruction made in that regard alone could only mean that the appellant was objecting to any instruction's being given on an issue which the jury should not have been asked to consider. That, however, is simply a roundabout way of repeating the earlier contention that the issue of permanency should not have been submitted to the jury.

 If the appellant is, indeed, again challenging the submission of the issue of permanency to the jury, the second contention is self-evidently redundant of the first contention. If Judge Wise were to be held by us to have "erred as a matter of law in denying the [appellant's] Motion for Judgment," the second contention would obviously be moot. If, on the other hand, we were to hold that Judge Wise did not err

as a matter of law (as we have already held) in "denying the [appellant's] Motion for Judgment," neither would he have erred in instructing the jury on an issue that was being properly submitted to it. The second contention, whichever way the first contention goes, has no independent significance.

If, on the other hand, the appellant is objecting to the substantive content of Judge Wise's instruction, the objection would run afoul of Rule 2–520(e)'s requirement of particularization:

> *No party may assign as error the giving* or the failure to give *an instruction unless the party objects on the record* promptly after the court instructs the jury, *stating distinctly the matter to which the party objects and the grounds of the objection.*

(Emphasis supplied). There was no glimmer of substantive particularization given by the appellant here.

A contention of substantive import would suffer the additional handicap that the appellant, in the course of submitting requested jury instructions, submitted its Requested Instruction No. 8, which tracked Maryland Pattern Jury Instruction–Civil 30:8 on the "nature and extent of disability." Judge Wise gave precisely that requested instruction. The appellant will not be heard to complain about having gotten exactly what it asked for.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**